## SIMS *v.* SIMS.

[Nos. 18,794 and 18,821. Filed November 22, 1957. Rehearing denied January 10, 1958. Transfer denied March 14, 1958. Petition to recall ruling denying transfer dismissed April 22, 1958.]

*Ralph B. Gregg, Arthur H. Northrup, Gregg, Fillion, Fillenwarth & Hughes,* of Indianapolis, *Ivan D. Pogue,* of Franklin, and *Stevenson & Stevenson,* of Danville, for appellant.

*George R. Jeffrey, Pearl Lee Hampton, Jeffrey & Jeffrey,* of counsel, and *Kivett & Kivett,* of counsel, all of Indianapolis, for appellee.

CRUMPACKER, C. J.—After 40 years of married life the parties hereto each sought a divorce from the other in the Marion Superior Court early in 1955. The cause was venued to the Hendricks Circuit Court where, on July 8 of that year the appellee was granted an absolute divorce from the appellant on her complaint. The court's decree divided certain chattels between the parties, vested in the appellee title to residence property owned by them as tenants by the entirety and awarded appellee alimony in the sum of $72,407.93 and $14,051.00 attorneys' fees. The appellant appealed such judgment to this court and the appellee promptly sought support money and additional attorneys' fees pending such appeal. Upon such application she was allowed $100.00 per week support money and $1,800.00 to hire lawyers to defend her judgment. From this order the appellant also appealed to this court and on February 23, 1956, we ordered the two appeals consolidated for briefing, oral argument and final disposition.

At the outset we are confronted with the contention that the Hendricks Circuit Court was without jurisdiction to adjudicate the issues involved in this litigation because it had before it no substantial evidence that the appellee, the plaintiff below, had been a resident of Marion County for six months

immediately prior to the filing of her complaint as required by §3-1203, Burns' 1946 Replacement. This question was not raised in the trial court and unless it goes to the jurisdiction of the Hendricks Circuit Court over the subject matter of the litigation it cannot be urged for the first time in this court. It is the general rule that if the court has jurisdiction of the class of actions to which the particular case under consideration belongs it has jurisdiction of the particular case. *Jackson* v. *Smith* (1889), 120 Ind. 520, 22 N. E. 431; *Tucker, Treasurer* v. *Sellers* (1892), 130 Ind. 514, 30 N. E. 531; *State ex rel. Felthoff* v. *Richards* (1932), 203 Ind. 637, 180 N. E. 596.

The phrase "subject matter of the action" is sometimes used to refer to the thing involved in a particular case but such is not its meaning when used in the rule regarding jurisdiction. Flanagan, Indiana Pleading and Procedure, §21. It is not contended that the Hendricks Circuit Court does not have jurisdiction over that "class of cases" known as divorce actions. The exercise of that jurisdiction, however, is contingent upon proof of the plaintiff's residence in the manner provided by §3-1203, Burns' 1946 Replacement. If there was a failure of such proof in the present case the question should have been raised in the trial court and not here for the first time.

The appellant's next proposition is that the alimony and attorneys' fees awarded by the court to the appellee are excessive considering the amount of his property and the source thereof. The evidence in the record most favorable to the court's adjudication of property rights between the parties tends to establish the appellant's net worth at the time of trial at $250,250.00. According to the appellant's own figures the cash and tangible property awarded to the appellee by the court's decree aggregate $91,607.93. That is approximately

$8,000.00 over and above what the appellee could have taken despite an unfavorable will had the appellant died. It is true that the great bulk of the appellant's estate was inherited from a cousin, Hazel Hill, less than three years before the divorce suit was filed. The appellant insists that the court had no right to take this inheritance into consideration in fixing alimony and when such inheritance is eliminated from consideration the arbitrary character and unreasonable extravagance of the allowance becomes apparent beyond peradventure. In other words because something over $200,000.00 of the appellant's wealth was not accumulated through the joint efforts of the husband and wife over a period of 40 years of married life but came to the husband as a testamentary gratuity, due to the accident of birth, and which, of course, he did no more to earn than she did, the appellee, sinned against to the point of divorce, is not entitled to share in such inheritance. This seems to us a rather amazing doctrine. In its support we are referred to *Shula* v. *Shula* (1956), 235 Ind. 210, 132 N. E. 2d 612; *Temme* v. *Temme* (1937), 103 Ind. App. 569, 9 N. E. 2d 111; *Indorante* v. *Indorante* (1950), 339 Ill. App. 577, 90 N. E. 2d 563. In the Shula case the court said: "The *primary factor* in fixing the alimony is the existing property of the parties although other factors the court may consider are the source of the property, the income of the parties . . . ." (Our emphasis.) Much of the property involved in the Shula case was held by the parties as tenants by the entirety and as to it the court repudiated the frequently stated rule that the wife should receive such sum as would leave her in as good condition as she would have been as a surviving wife upon her husband's death. See *Glick* v. *Glick* (1927), 86 Ind. App. 593, 159 N. E. 33. The judgment for alimony in the Shula case was reversed because

there was no evidence to support it but nowhere in the court's opinion is it even hinted that inherited property, owned by the husband at the time of the divorce, cannot be considered in fixing alimony. In the Temme case the allowance of alimony exceeded the value of the husband's entire net estate which, this court said, was an abuse of discretion requiring a reversal and new trial. Here also not one word is said concerning the propriety of considering the value of inherited property in fixing alimony. The nearest approach to the rule advocated by the appellant is found in the decision of the court in the case of *Indorante* v. *Indorante, supra,* wherein the court said: "Evidence that property held by the husband at the time of the hearing granting *him* a divorce, had either been inherited by him or had been the result of his own efforts and his wife had contributed nothing, precluded any claims by the wife to an interest in such property." (Our emphasis.) It is apparent at once that this holding is predicated wholly upon the theory that the wife, being the offender, is not entitled to share in property which she had nothing to do with acquiring. That it is inapplicable to the present case is obvious.

The Supreme Court in *Shula* v. *Shula, supra,* said: ". . . the amount of alimony to be allowed in a divorce proceeding is a matter within the sound discretion of the trial court. The decision will not be reversed upon appeal unless an abuse of such discretion is shown. *Dissette et al.* v. *Dissette* (1935), 208 Ind. 567, 196 N. E. 684; *Gibble* v. *Gibble* (1942), 111 Ind. App. 60, 40 N. E. 2d 347; *Adams* v. *Adams* (1947), 117 Ind. App. 335, 69 N. E. 2d 632." In determining whether or not a given judgment for alimony represents the exercise of sound discretion the courts have frequently applied the rule stated in 27 C. J. S., Divorce, §236, as follows: ". . . frequently

the amount of alimony is fixed at the amount the wife would have received had her husband died, . . . in no event should the allowance be less than her dower interest would have been. Certainly, when an absolute divorce is granted the value of the dower that the wife would otherwise have received may also be considered in fixing alimony."

We are familiar with many cases in which the courts have frowned upon alimony where young women have married wealthy old men, lived with them but a short time, have borne them no children and then seek divorce with a substantial part of their husband's fortune as alimony. Such cases have no counterpart here. The appellant and the appellee lived together for 40 years during all of which time the appellant taught school except for approximately two years while bearing two sons both of whom were subsequently killed in World War II. In that time she earned $70,946.04, all of which went to assist in the household and living expenses of the family. She bought and maintained her own automobile for transportation to and from school and paid for vacations for the two boys in Alaska and Mexico. She contributed a small amount of money inherited from her father to the purchase of a home on North Oakland Avenue, Indianapolis, Indiana. She retired as teacher in 1951 upon the advice of her physician who found her to be suffering from an advance case of arthritis. As a retired teacher she receives a pension of $144.10 per month for life. The present value of such pension does not appear in the evidence. On these facts we cannot say as a matter of law, that an abuse of discretion is reflected in the court's judgment for alimony.

Nevertheless the appellant insists that the alimony otherwise allowable was mitigated by the appellee's own

wrongdoing. *Temme* v. *Temme, supra,* is quoted as authority for the statement that when the faults causing a divorce are in part mutual this should mitigate the amount of alimony. It has always been our understanding that the applicant for a divorce must be innocent as well as injured and if she is liable to a charge which is ground for divorce she cannot obtain one, even though her husband may have misconducted himself. *Eward* v. *Eward* (1920), 72 Ind. App. 638, 125 N. E. 468; *Smiley* v. *Smiley* (1943), 114 Ind. App. 138, 51 N. E. 2d 98. The fact that the court granted appellee a divorce and found against the appellant on his cross-complaint establishes the appellee's innocence of any such wrongdoing as might mitigate her claim for alimony.

The appellant next contends that the evidence is insufficient to warrant the court in granting the appellee a divorce. The testimony in this case covers 694 pages of the transcript which is bound in three volumes. Obviously, a narrative recital of such voluminous evidence has no place in this opinion. A few instances of the appellant's misconduct are here mentioned which, in our opinion, are sufficient to sustain the court's decree. The appellee made an unexpected visit to the appellant's farm in Johnson County where she found appellant clad only in his underwear entertaining a woman named Grace. On that occasion he told the appellee to get a divorce; that he was going to protect Grace in the situation. A guest registration card from the Smoky Traveler Motel signed "Mr. & Mrs. F. Z. Sims" in the appellant's handwriting, was introduced in evidence. It is reasonably inferable that he would have had no occasion to register in that manner unless he had a woman with him and there is no contention that such woman was the appellee. He admitted having had Grace at the

Johnson County farm house on other occasions and was seen walking down an alley with groceries and going into the rear entrance of Grace's apartment in Indianapolis where he stayed all night and all the next day. As was said in *Waugh* v. *Waugh* (1874), 47 Ind. 580: "If the charges made were true, and adultery was not committed, then human nature is inconstant, and inductive reasoning utterly fallacious." In this connection the appellant charges error in the admission of the registration card from the Smoky Traveler Motel. It was identified as the original card taken from the files of the motel and the handwriting thereon positively identified as the appellant's. We see no error in its admission.

In view of our conclusion that the court's decree of divorce and alimony should be affirmed we see no reason for allowance of $100.00 per week support and $1,800.00 additional attorneys' fees pending this appeal as the appellee has ample funds of her own to cover such expenses.

Judgment affirmed in Cause No. 18,794 and the appellee is hereby ordered to pay and rebate to the appellant all sums of money received by her by virtue of the trial court's order for support money and attorneys' fees in Cause No. 18,821.

NOTE.—Reported in 146 N. E. 2d 111.