## LUCY BLOUNT WILLIAMS v. ALFRED WILLIAMS III

### No. 88

(Filed 1 February 1980)

1. **Divorce and Alimony § 16— dependent spouse—meaning of "actually substantially dependent"**

   To qualify as a dependent spouse under G.S. 50-16.1(3) as one "actually substantially dependent" upon the other spouse, the spouse seeking alimony must have actual dependence on the other in order to maintain the standard of living in the manner to which such spouse became accustomed during the several years prior to separation, *i.e.*, the party seeking alimony must actually be unable to maintain the accustomed standard of living from his or her own means.

2. **Divorce and Alimony § 16— meaning of "maintenance and support"—construction of statutes in pari materia**

   In determining the meaning of "maintenance and support" in G.S. 50-16.1(3), that statute must be construed *in pari materia* with the provisions of G.S. 50-16.5 pertaining to the amount of alimony.

3. **Divorce and Alimony § 16— dependent spouse—substantially in need of maintenance and support**

   To qualify as a dependent spouse under G.S. 50-16.1(3) as one who is "substantially in need of maintenance and support from the other spouse," the spouse seeking alimony must establish that he or she would be unable to maintain his or her accustomed standard of living (established prior to separation) without financial contribution from the other.

4. **Divorce and Alimony § 16— dependent spouse—consideration of "estates"— estate depletion not required**

   In listing "estates" of the parties as one of the factors in G.S. 50-16.5 for determining the amount of alimony, the legislature did not intend that one seeking alimony be disqualified as a dependent spouse because, through estate depletion, such spouse would be able to maintain his or her accustomed standard of living.

5. **Divorce and Alimony § 16— dependent spouse—"other facts of particular case"—length of marriage—contribution to financial status**

   When determining dependency pursuant to G.S. 50-16.1(3) and G.S. 50-16.5, the court's consideration of "other facts of the particular case" should include a consideration of the length of the marriage and the contribution each party has made to the financial status of the family over the years.

6. **Divorce and Alimony § 16— dependent spouse—large estates by both parties**

   The trial court properly concluded that plaintiff wife was the dependent spouse and defendant husband was the supporting spouse where the court found upon competent evidence that the accustomed standard of living of the parties would require expenditures by plaintiff of $3,500 per month; plaintiff

Williams v. Williams

had a net worth of $761,975 and defendant had a net worth of $870,165; plaintiff had a gross income from her estate of $1,833 per month; and defendant had a gross income of $116,660 and a net income of $61,702 for the past year, since plaintiff had a shortfall of $1,667 per month which she could meet only by depleting her estate.

**7. Divorce and Alimony § 16— award of alimony—consideration of fault**

Considering G.S. 50-16.2 and G.S. 50-16.5(b) *in pari materia*, it was the intent of the legislature that fault be a consideration in awarding alimony.

**8. Divorce and Alimony § 16— alimony award—improper award of counsel fees**

The trial court improperly awarded counsel fees to plaintiff wife in an action for alimony where an award of counsel fees was not necessary to enable plaintiff, as litigant, to meet defendant, as litigant, on substantially even terms by making it possible for her to employ counsel. Furthermore, the trial court erred in awarding plaintiff $2,500 as "reasonable expenses" of prosecuting the suit.

**9. Appeal and Error § 2— appeal of right from Court of Appeals after dissent—matters which may be considered**

In an appeal as a matter of right from a decision of the Court of Appeals to which there was a dissent, the Supreme Court is not limited to consideration only of matters mentioned by the dissenting judge's opinion.

**10. Appeal and Error § 2— appeal from Court of Appeals—questions not brought forward**

In an appeal from a decision of the Court of Appeals, questions not brought forward from those properly presented in the Court of Appeals are deemed abandoned. Rule 28(a), N. C. Rules of Appellate Procedure.

ON appeal as a matter of right pursuant to G.S. 7A-30(2) from the decision of the Court of Appeals, 42 N.C. App. 163, 256 S.E. 2d 401 (1979), one judge dissenting, reversing judgment entered for plaintiff at the 8 May 1978 Session of WAKE County District Court, *Parker, J.* presiding.

The primary issue on this appeal is a determination of the meaning of "dependent spouse" in our alimony statutes, G.S. 50-16.1 *et seq.* We also address the issue of entitlement to counsel fees and other suit expenses in an action for permanent alimony.

*Gulley, Barrow & Boxley by Jack P. Gulley for plaintiff appellant.*

*Hunter & Wharton by John V. Hunter III for defendant appellee.*

CARLTON, Justice.

I.

On 23 August 1977 plaintiff filed a complaint seeking, *inter alia,* a divorce from bed and board, temporary alimony, permanent alimony, counsel fees and suit money, custody of the one minor child of the parties, and child support.

Prior to trial, the parties stipulated that defendant had abandoned plaintiff, one of the statutory grounds for allowing alimony under G.S. 50-16.2. The parties also agreed that plaintiff should have the care, custody and control of the minor son and that defendant should have reasonable and liberal visitation rights.

At hearing, testimony of the plaintiff tended to show that she and defendant were married in 1947; that she and defendant have three adult children and one minor child; that her husband's initial support to the family was not adequate and her father sent her $100.00 each month and later raised this to $200.00 which was paid from stock owned by her; that her husband's contributions to household and family expenses did increase gradually over the years, and 7 or 8 years prior to suit reached $800.00 a month plus payment of the mortgage, gasoline and utility bills; and that she had repeatedly asked defendant for more money to run the household throughout the marriage but he had refused.

She further testified that the family home was built in 1963 with $60,000.00 of her money and that she had spent in addition some $15,000.00 of her own money for improvements.

Plaintiff also testified that she is a junior college graduate with no experience in business; that her own average income over the past three years has been around $21,000.00, mostly from stocks; that she had a savings account balance of $123,000.00 in May of 1977 and transferred $50,000.00 of this to bonds approximately ten days prior to trial; that though she does not recall doing so, she has apparently co-signed several financial documents with defendant; that she knows little about her financial transactions as defendant has always handled them for her and at one time was paid by her family to do so; that for several years now she has contributed approximately $3,000.00 out of her savings each month for family expenses; and that the monthly expenses for herself and her minor child total $6,754.00.

Testimony of the defendant tended to show that he is president of Alfred Williams and Company of Raleigh and owns 270 of the 600 shares of stock outstanding; that in 1976 he paid $48,000.00 for a furnished condominium in Pinehurst but had the deed recorded in the name of T. F. Ellis and did not include that property on his financial statement; that he paid $4,500.00 for the lot for the marital home some three years before construction and title to the lot was conveyed in the entireties; that in addition to the $60,000.00 paid by his wife, he borrowed an additional $30,000.00 to complete the house; that his financial statement for 1976 shows a net worth of $870,000.00; that his wife did co-sign a personal guarantee for a substantial loan to Williams Investment Corporation, a business owned by him, plaintiff and their children; that he receives income from various rental properties in Raleigh and makes monthly payments on various financial transactions.

The parties introduced into evidence various exhibits regarding their financial status.

On 8 May 1978, the trial court entered three separate orders finding and concluding, *inter alia*, that plaintiff had a net worth in May, 1977, of $754,000.00 which had increased to $761,975.00 by the time of trial, and defendant had a net worth at time of trial of $870,165.00; that plaintiff had an annual gross income of approximately $22,000.00 in interest and dividends and defendant had a gross income of $116,660.00 in 1977 with an after-tax income of $61,702.00; that plaintiff's reasonable monthly expenses for maintaining the household in which she is presently living "in a manner commensurate with the standard of living usually enjoyed by the parties" was $3,500.00 per month; that for the past 16 years, the plaintiff had contributed over $2,500.00 per month toward the maintenance of the household and at the time of trial and for several years prior thereto, the defendant's contributions to the maintenance of the household had been $800.00 per month plus mortgage, utility and other payments of $634.00 per month.

The trial court concluded that plaintiff was the dependent spouse and defendant was the supporting spouse. It went on to award plaintiff alimony of $1,000.00 per month, possession of the home, mortgage, tax and utility payments, payment of insurance coverage on the home, and payment of certain medical expenses. The court also found that the husband had the means to pay such

alimony. The trial court based its conclusions expressly on the evidence in the case without regard to any presumption that the husband was the supporting spouse.

Plaintiff was also awarded $4,500.00 per year for private school expenses of the minor child, an additional $450.00 per month child support, $3,000.00 for each of her two attorneys and $2,500.00 for suit expenses.

We note that the award here was for permanent alimony. No *pendente lite* hearing was held as defendant had contributed $800.00 per month plus house payments and other expenses during pendency of the action. Plaintiff was granted a divorce from defendant *a mensa et thoro*.

From the judgments, defendant appealed to the Court of Appeals. That court held, *inter alia*:

(1) The trial court erred in awarding alimony to plaintiff because "[t]he evidence completely fails to support the trial court's finding that plaintiff is substantially dependent upon the defendant or in need of maintenance and support from him."

(2) The trial court further erred in awarding counsel fees because "there is no evidence that plaintiff is a dependent spouse."

(3) The trial court erred in awarding plaintiff $2,500.00 for suit expenses because plaintiff is not a dependent spouse and because G.S. 50-16.4 makes no mention of such "expenses."

So saying, the Court of Appeals reversed the orders for alimony, counsel fees and suit expenses and further vacated and remanded the child support award because no findings were present in the record as to actual past expenditures for the child.

Judge Erwin dissented, agreeing with all portions of the majority opinion except that reversing the award of alimony. He would hold that plaintiff was the dependent spouse because the findings of the trial judge were supported by competent evidence.

## II.

## A.

On appeal to this Court, plaintiff first contends that the Court of Appeals erroneously reversed the trial court's findings

that she is a dependent spouse within the meaning of our alimony statutes. We agree with Judge Erwin's dissent that the trial court's findings were supported by competent evidence, and we also think the trial court properly interpreted our statutory and case law in this portion of its order. We therefore reverse the Court of Appeals.

Alimony is defined by G.S. 50-16.1(1) as "payment for the *support and maintenance* of a spouse, either in lump sum or on a continuing basis, ordered in an action for divorce, whether absolute or from bed and board, or an action for alimony without divorce." (Emphasis added.) While the word "permanent" is not included, the stated definition obviously contemplates what is commonly referred to as "permanent alimony." *See* R. Lee, *North Carolina Family Law* § 135 (Manuscript ed. 1980).

G.S. 50-16.2 provides that only a "dependent spouse" is entitled to alimony when one of the ten enumerated grounds in that statute is present. Here, defendant stipulated that he had abandoned the plaintiff as contemplated by G.S. 50-16.2(4). The crucial question to determine entitlement to alimony, therefore, revolves around the meaning intended by the statutory term "dependent spouse."

G.S. 50-16.1(3) defines "dependent spouse" to mean a spouse, "whether husband or wife, (1) who is *actually substantially dependent* upon the other spouse for his or her maintenance and support *or* (2) is *substantially in need* of maintenance and support from the other spouse." (Numbered parentheses and emphasis added.)

Conversely, G.S. 50-16.1(4) defines "supporting spouse" to mean a spouse, "whether husband or wife, (1) upon whom the other spouse is actually substantially dependent or (2) from whom such other spouse is substantially in need of maintenance and support. A husband is deemed to be the supporting spouse unless he is incapable of supporting his wife." (Numbered parentheses added.)

The legislature has not spelled out what is precisely meant by the terms "actually substantially dependent," "substantially in need of," and "maintenance and support." However, when construing the words of a statute, the intent of the legislature con-

trols. *State v. Fulcher,* 294 N.C. 503, 243 S.E. 2d 338 (1978); *State v. Hart,* 287 N.C. 76, 213 S.E. 2d 291 (1975). Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give it plain and definite meaning, *State ex rel. Utilities Commission v. Edmisten,* 291 N.C. 451, 232 S.E. 2d 184 (1977); *Peele v. Finch,* 284 N.C. 375, 200 S.E. 2d 635 (1973), keeping in mind that nontechnical statutory words are to be construed in accordance with their common and ordinary meaning. *Lafayette Transportation Service, Inc. v. County of Robeson,* 283 N.C. 494, 196 S.E. 2d 770 (1973); *In re McLean Trucking Company,* 281 N.C. 242, 188 S.E. 2d 452 (1972).

[1]   Accordingly, we think the legislative intent in use of the phrase "actually substantially dependent" is clear. This term obviously implies that the spouse seeking alimony must have actual dependence on the other *in order to maintain the standard of living in the manner to which that spouse became accustomed during the last several years prior to separation.* We elaborate below on the underlined portion of the preceding sentence. Thus, to qualify as a "dependent spouse" under that portion of G.S. 50-16.1(3), one must be actually without means of providing for his or her accustomed standard of living. In the case at bar, plaintiff would obviously not qualify under that portion of the definition.

The second and third cited expressions from the statute, however, are not so easily construed. "Substantially in need" obviously refers to something less than being "actually substantially dependent," but the degree of difference is unclear. The economic level contemplated by the phrase "maintenance and support" is also not explicitly defined in the statute.

A fundamental rule of statutory construction is that when the legislature has erected within the statute itself a guide to its interpretation, that guide must be considered by the courts in the construction of other provisions of the act which, in themselves, are not clear and explicit. *In re Watson,* 273 N.C. 629, 161 S.E. 2d 1 (1968). The act must be considered as a whole and none of its provisions shall be deemed useless or redundant if they can be reasonably considered as adding something to the act which is in harmony with its purpose. *State v. Harvey,* 281 N.C. 1, 187 S.E. 2d 706 (1972). Statutes dealing with the same subject matter must be construed *in pari materia, Becker County Sand & Gravel Com-*

*pany v. Taylor,* 269 N.C. 617, 153 S.E. 2d 19 (1967); *Shaw v. Baxley,* 270 N.C. 740, 155 S.E. 2d 256 (1967), as together constituting one law, *Jackson v. Guilford County Board of Adjustment,* 275 N.C. 155, 166 S.E. 2d 78 (1969) and harmonized to give effect to each, 82 C.J.S. *Statutes* § 366 at 810 (1953 & Cum. Supp. 1979).

[2]   Applying the stated rules, G.S. 50-16.1 through G.S. 50-16.8 must be construed *in pari materia.* Each of these sections deals with the same subject matter and constitutes one law—that of alimony—with the common purpose of delineating the statutory rules for the same. Thus, in construing the meaning of "substantially in need" and "maintenance and support" in G.S. 50-16.1(3), we must turn for guidance to G.S. 50-16.5, the statute for determining *amount* of alimony. That statute provides that "[a]limony shall be in such amount as the circumstances render necessary, having due regard to the (1) estates, (2) earnings, (3) earning capacity, (4) condition, (5) *accustomed standard of living of the parties,* and (6) other facts of the particular case." (Numbered parentheses and emphasis added.)

We think usage of the term "accustomed standard of living of the parties" completes the contemplated legislative meaning of "maintenance and support." The latter phrase clearly means more than a level of mere economic survival. Plainly, in our view, it contemplates the economic standard established by the marital partnership for the family unit during the years the marital contract was intact. It anticipates that alimony, to the extent it can possibly do so, shall sustain that standard of living for the dependent spouse to which the parties together became accustomed. For us to hold otherwise would be to completely ignore the plain language of G.S. 50-16.5 and the need to construe our alimony statutes *in pari materia.* This we are unwilling to do.

[3]   Having so construed that portion of G.S. 50-16.1(3), we are then able to discern legislative intent in usage of the phrase "substantially in need of." Having previously determined that the first portion of G.S. 50-16.1(3) requires an actual dependence of one spouse on the other for maintenance of the accustomed standard of living (*i.e.,* the party seeking alimony would be actually unable to maintain the accustomed standard of living from his or her own means), the determination of a dependent spouse under the second portion of G.S. 50-16.1(3) requires only that the spouse

seeking alimony establish that he or she would be unable to maintain his or her accustomed standard of living (established prior to separation) without financial contribution from the other.

Our holding on this point today is not inconsistent with lower court holdings on the same issue. Previous decisions by the Court of Appeals have implicitly recognized that the meaning of "substantially in need of maintenance and support" found in G.S. 50-16.1(3) must be construed *in pari materia* with the terms of G.S. 50-16.5. In *Peeler v. Peeler*, 7 N.C. App. 456, 172 S.E. 2d 915 (1970), the defendant husband argued that in order for his spouse to be found dependent, she had to be unable to exist without his aid. The Court of Appeals refused to agree with the husband's position saying:

> The statute [G.S. 50-16.1(3)] provides, among other things, that a dependent spouse [is] a spouse who is "substantially in *need* of maintenance and support from the other spouse." In determining the *needs* of a dependent spouse, all of the circumstances of the parties should be taken into consideration, including the property, earnings, earning capacity, condition and *accustomed standard of living of the parties*. (Emphasis added.)

*Id.* at 461, 172 S.E. 2d at 918. *Accord, Sprinkle v. Sprinkle*, 17 N.C. App. 175, 193 S.E. 2d 468 (1972). Even under our prior statutes which awarded alimony for a "reasonable subsistence," this Court considered accustomed standard of living in setting "subsistence" amount. *Cf., Schloss v. Schloss*, 273 N.C. 266, 160 S.E. 2d 5 (1968) (Wealthy husband abandoned wife; $1,500.00 a month alimony to her held a "reasonable subsistence"). Moreover, attention to expenses incurred in maintaining an accustomed standard of living when awarding alimony, rather than attention to subsistence level expenses, is the general view in other jurisdictions. *See, Annot.*, 1 A.L.R. 3d 6, 41-43 (1965 & Supp. 1979) and cases cited therein.

Applying the factors of G.S. 50-16.5, we think the legislature intended trial courts to determine dependency under G.S. 50-16.1(3) bearing in mind these propositions:

(1) The parties must have been legally married to each other and one spouse must have been adjudged to have committed one

of the grounds for alimony under G.S. 50-16.2 or have stipulated that one of the grounds is present. These are findings of fact which must be entered into the record by the trial court.

(2) The incomes and expenses measured by the standard of living of the family as a unit must be evaluated from the evidence presented. If this comparison reveals that one spouse is without means to maintain his or her accustomed standard of living, then the former would qualify as the dependent spouse under the phrase "actually substantially dependent." G.S. 50-16.1(3).

(3) If the comparison does not reveal an *actual* dependence by one party on the other, the trial court must then determine if one spouse is "substantially in need of maintenance and support" from the other. In doing so, these additional guidelines should be followed:

A. The trial court must determine the standard of living, socially and economically, to which the parties *as a family unit* had become accustomed during the several years prior to their separation.

B. It must also determine the present earnings and prospective earning capacity and any other "condition" (such as health and child custody) of each spouse at the time of hearing.

C. After making these determinations, the trial court must then determine whether the spouse seeking alimony has a demonstrated need for financial contribution from the other spouse in order to maintain the standard of living of the spouse seeking alimony in the manner to which that spouse became accustomed during the last several years prior to separation. This would entail considering what reasonable expenses the party seeking alimony has, bearing in mind the family unit's accustomed standard of living.

[4]  D. The financial worth or "estate" of both spouses must also be considered by the trial court in determining which spouse is the dependent spouse. We do not think, however, that usage of the word "estate" implies a legislative intent that a spouse seeking alimony who has an estate sufficient to maintain that spouse in the manner to which he or she is accustomed, *through estate depletion*, is disqualified as a dependent spouse. Such an interpretation would be incongruous with a statutory emphasis on

"earnings," "earning capacity," and "accustomed standard of living." It would also be inconsistent with plain common sense. If the spouse seeking alimony is denied alimony because he or she has an estate which can be spent away to maintain his or her standard of living, that spouse may soon have no earnings or earning capacity and therefore no way to maintain *any* standard of living.

We think, therefore, that the trial court consideration of the "estates" of the parties is intended primarily for the purpose of providing it with another guide in evaluating the earnings and earning capacity of the parties, and not for the purpose of determining capability of self-support through estate depletion. We think this is equally true in giving consideration to the estate of the alleged supporting spouse. Obviously, a determination that one is the supporting spouse because he or she can maintain the dependent spouse at the standard of living to which they were accustomed through estate depletion could soon lead to inability to provide for either party. *See, e.g., Beall v. Beall,* 290 N.C. 699, 228 S.E. 2d 407 (1976); *Berry v. Berry,* 56 App. Div. 2d 522, 391 N.Y.S. 2d 120 (1977).

Defendant argues that awarding alimony to this plaintiff would result in maintaining "not the wife, but her wealth." He argues that compelling the husband to build up by alimony a "treasure hoard for the wife" has been consistently rejected. *Sayland v. Sayland,* 267 N.C. 378, 148 S.E. 2d 218 (1966) (decided under prior law); *Taylor v. Taylor,* 26 N.C. App. 592, 216 S.E. 2d 737 (1975). Nothing in this decision is designed to allow plaintiff to increase her wealth at the expense of defendant. Under the guidelines established, plaintiff would be required to continue in expending *all* of her annual income if she desires to maintain her present standard of living. Should the wife's capital assets increase in value, through inflation, prudent investment or otherwise, and results in an increase of her income, defendant would, of course, be entitled to petition the court for modification of the alimony order under G.S. 50-16.9.

We note that, while the Court of Appeals has seldom discussed whether to consider a dependent spouse's estate when determining eligibility for permanent alimony, it has tended to disallow depletion of estates when alimony *pendente lite* has been granted. "The mere fact that the wife has property or means of

her own does not prohibit an award of alimony pendente lite." *Cannon v. Cannon,* 14 N.C. App. 716, 721, 189 S.E. 2d 538, 541 (1972). *Accord, Sprinkle v. Sprinkle, supra; Newsome v. Newsome,* 22 N.C. App. 651, 207 S.E. 2d 355 (1974).

In *Davis v. Davis,* 35 N.C. App. 111, 240 S.E. 2d 488 (1978), where the plaintiff wife had a savings account of $21,000.00 which was larger than her spouse's savings account, the Court of Appeals upheld an award of ·alimony *pendente lite* citing the husband's larger income. There the court stated, "Surely we cannot say that under these circumstances the dependent spouse must use her meager savings during the pendency of this action. . . ." *Id.* at 114, 240 S.E. 2d at 489. Likewise in *Gardner v. Garnder,* 40 N.C. App. 334, 252 S.E. 2d 867 (1979), the Court of Appeals upheld an award of alimony *pendente lite* despite the dependent wife's estate of $220,000.00.

We do not believe the fact that these cases involve alimony *pendente lite* rather than permanent alimony makes them inappositive to the case *sub judice.* The statutory provisions for alimony *pendente lite* found in G.S. 50-16.3 include a requirement that the spouse seeking alimony *pendente lite* be a dependent spouse presumably within the purview of G.S. 50-16.1(3). *See also* G.S. 50-16.4.

Plainly, it costs more to support two homes than one and unless one or both of the parties has income which had previously been unnecessary for their combined support, estate depletion may occur. We simply hold that our legislature, in listing "estates" as one of the factors in G.S. 50-16.5, did not intend that one seeking alimony be disqualified as a dependent spouse because, through estate depletion, that spouse would be able to maintain his or her accustomed standard of living.

[5] E. We further note that G.S. 50-16.1(3), read *in pari materia* with G.S. 50-16.5, in defining dependency, provides for a trial court's consideration of "other facts of the particular case" when awarding alimony. Under this statutory rubric, we feel that consideration should be given to the length of a marriage and the contribution each party has made to the financial status of the family over the years. The law is replete with cases in other jurisdictions where a dependent spouse contributed substantial labor or assets which improved the supporting spouse's economic

position and estate. In such cases, courts have often awarded alimony on a theory or reimbursement. In *Fields v. Fields*, 303 Ky. 624, 198 S.W. 2d 298 (1946), much of the husband's property was acquired after marriage. The wife's income relieved him of the necessity of spending his earnings or savings for current household obligations. There, the court awarded the wife alimony as reimbursement for her contribution to her husband's wealth. *See also Sims v. Sims*, 128 Ind. App. 408, 146 N.E. 2d 111 (1957); *DeRoin v. DeRoin*, 198 Okla. 430, 179 P. 2d 685 (1947); *Fields v. Fields*, 343 S.W. 2d 168 (Mo. App. 1960); 1 A.L.R. 3d, *supra* at 29-33.

The formula for determining whether alimony is appropriate, however, is only half present once the issue of dependency has been resolved. G.S. 50-16.1(4), as noted above, defines supporting spouse as one upon whom the dependent spouse must rely. Courts of this State have recognized that evidence one spouse is dependent does not necessarily infer the other spouse is supporting. *Cf., Manning v. Manning*, 20 N.C. App. 149, 201 S.E. 2d 46 (1973) (Alimony order vacated and remanded where the court stated, *inter alia*, that unemployed wife could have been supported by someone not her spouse).

Furthermore, it must be remembered that we are not concerned here with establishing guidelines for determining the amount of alimony. Defendant's appeal to the Court of Appeals did not attack the *amount* of alimony awarded by the trial court but questioned his spouse's qualification for alimony based on her dependency. After making an initial determination of dependency, the trial court would proceed to follow the rules established by our statutes and case law in setting the amount of alimony. It is entirely possible, for example, that the trial court might determine a spouse dependent under the guidelines noted above and then find that it cannot order the amount of alimony needed from the other spouse because the latter is incapable of providing that total amount of support for any number of reasons.

Finally, we note that no precise mathematical equation can be established for determining which spouse is dependent and which is supporting. We have attempted here to establish general guidelines on the basis of our interpretation of the statutes. Within these guidelines, our trial courts must continue to make determinations on a case-by-case basis.

B.

[6]   Applying these principles to the facts of the case *sub judice*, we hold that the trial court properly concluded that plaintiff was the dependent spouse and defendant the supporting spouse for the following reasons:

(1) The trial court found that the standard of living to which the parties had become accustomed would require monthly expenses of more than $3,500.00 by the plaintiff.

(2) It also found that the wife's *gross* income averaged $1,833.00 per month from her estate which had a net worth of $761,975.00. It found that defendant had a gross income of $116,660.00 and a net income of $61,702.00 in 1977 from his estate which had a net worth of $870,165.00 and from his salary as president of Alfred Williams and Company.

All of the trial court's findings noted above are supported by competent evidence in the record and are therefore binding on us on appeal. *Beall v. Beall,* 290 N.C. 669, 228 S.E. 2d 407 (1976); *Rock v. Ballou,* 286 N.C. 99, 209 S.E. 2d 476 (1974).

The dependent spouse here was thus "substantially in need of maintenance and support" from the supporting spouse. Subtracting plaintiff's monthly income of $1,833.00 from her expenses of $3,500.00 leaves a $1,667.00 shortfall per month which plaintiff could meet only by depleting her estate, a necessity we have rejected in determining entitlement to alimony. Plaintiff is therefore dependent on defendant for an amount needed to maintain her in the manner to which she was accustomed—the standard established by the parties during the last several years prior to separation.

[7]   We would be remiss, in attempting to provide guidance for the determination of "dependency," not to mention the question of fault in the marital separation. Fault is nowhere specifically listed in our alimony statutes as one of the factors to be considered in determining which spouse is the dependent spouse nor in determining the amount of alimony. Indeed, alimony is not to be awarded as punishment for a broken marriage. *See Schloss v. Schloss, supra* (decided under prior law); *Lemons v. Lemons,* 22 N.C. App. 303, 206 S.E. 2d 327 (1974). However, G.S. 50-16.2 provides for the allowance of alimony to the dependent spouse *only*

when the supporting spouse has committed one of the ten enumerated acts, all of which involve marital misdeeds. Moreover, G.S. 50-16.5(b) provides that one who might otherwise qualify as the dependent spouse may be denied alimony if he or she has committed one of the enumerated misdeeds. Considering the statutes *in pari materia,* we believe that our legislature clearly intended that fault be a consideration in awarding alimony.

In so providing, the legislature implicitly recognized that the dissolution of the family as an economic unit works hardship on both parties. Assets used to maintain one household do not stretch so far when maintaining two. In such cases, the burden of contending with diminished assets should, in all fairness, fall on the party primarily responsible for the break-up of the economic unit.

Nor do we find the notion of fault repugnant to sound public policy. One of the clear purposes of alimony is to accomplish a separation with the least possible social and financial disruption. The parties to marriage entered into a binding contract—one historically considered the strongest and most permanent known to the law. Sound public policy would dictate that the party who violated that binding contract should continue to bear its financial burden where he or she can reasonably do so *and* where that is necessary to prevent a relatively greater economic hardship on the party without fault. "Divorce inevitably produces painful alterations in the lives of the parties. A major function of alimony is to minimize its financial impact." H. Clark, *The Law of Domestic Relations* § 14.5 at 442 (1968).

We are not unmindful that attitudes towards alimony are changing. Several courts in other jurisdictions are basing their awards of alimony on such doctrines as equitable distribution or rehabilitative alimony. *See* R. Lee, *supra* at § 135.1. We are also not unmindful that our own alimony statute, premised as it is upon fault, has been questioned by some commentators. *See, e.g.,* Marschall, Proposed Reforms in North Carolina Divorce Law, 8 *N.C. Cent. L. R.* 35 (1976). These trends and criticisms, however, do not take into account the legislative mandate under which this Court, or any court in this State, labors. Changing trends in other jurisdictions are based on different statutory mandates. We do not believe our legislature intended to propel our State into a

world where " 'women's lib' [exists] as a *fait accompli,* " *see* Lee, *supra* at § 135.1 quoting Krause, *Family Law in a Nutshell* § 28.2 at 332 (1977), and where the presumption of equality in earning power is allowed to outweigh the reality of unequal financial bargaining position. *See, e.g., Kahn v. Shevin,* 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed. 2d 189 (1974). The statutory mandate is not a question of adherence to outdated traditions in the marital relationship, but a question of "fairness and justice to all parties." *Beall v. Beall, supra; Sayland v. Sayland, supra.*

Defendant urges that we declare that portion of G.S. 50-16.1 unconstitutional which deems the husband to be the supporting spouse unless he is incapable of supporting his wife. Defendant concedes that the trial court expressly stated in its order that no reliance was placed on this presumption in reaching its decision. He argues, however, that trial courts cannot continue to do this and "make it forever impossible for any man to raise the point." It is well-established that we do not pass upon a constitutional question if another issue is determinative of the matter before us. *Iredell County v. Crawford,* 262 N.C. 720, 138 S.E. 2d 539 (1964); *State v. Blackwell,* 246 N.C. 642, 99 S.E. 2d 867 (1957).

We do, however, agree with defendant that the trial court improperly designated the award to plaintiff as "permanent lump-sum alimony." G.S. 50-16.7 provides in part that alimony shall be paid by lump sum payment or periodic payments. Clearly, the trial court here has ordered periodic payments and that portion of the trial court order referring to a "lump sum" payment is vacated.

Finally, it is obvious that this decision concerns parties of unusual wealth, yet the issues addressed go to hundreds of cases tried in North Carolina each year. Suffice it to say that the principles established by this decision apply to parties of all economic status.

III.

[8] Plaintiff's second major contention in her appeal here is that the Court of Appeals improperly reversed the trial court order providing for an award of attorney fees. Since the Court of Appeals determined that plaintiff was not a dependent spouse, it held that attorney fees were not allowable. We agree with the

result reached by the Court of Appeals on this question albeit for a different reason than that court considered.

It is well-established in this jurisdiction that the purpose of the allowance of counsel fees is to enable the dependent spouse, *as litigant*, to meet the supporting spouse, *as litigant*, on substantially even terms by making it possible for the dependent spouse to employ adequate counsel. *Schloss v. Schloss, supra* (interpreting the pre-1967 statutes); *Rickert v. Rickert*, 282 N.C. 373, 193 S.E. 2d 79 (1972) (extending the holding in *Schloss* to the present statutes, G.S. 50-16.1 *et seq.*); 2 Lee, *North Carolina Family Law* § 148 at 70 (3d ed. 1965 & Cum. Supp. 1974).

It is clear from the record before us that an award of counsel fees was not necessary to enable plaintiff, as litigant, to meet defendant, as litigant, on substantially even terms by making it possible for her to employ counsel. That portion of the Court of Appeals' decision reversing the trial court allowance of attorney fees for plaintiff is therefore affirmed. Likewise, that portion of the Court of Appeals' decision reversing the trial court allowance of $2,500.00 to plaintiff as "reasonable expenses" of prosecuting this suit is also affirmed.

IV.

[9, 10]  In her brief to this Court, plaintiff states that the child support provisions of the trial court order are not involved in this appeal "since the dissent in the Court of Appeals was only with regards to the decision on alimony." This Court is not limited, in reviewing a decision of the Court of Appeals, to consideration of only such matters as may be mentioned by the dissenting judge in the Court of Appeals' opinion. However, since the parties in their briefs do not argue the portions of the trial court order involving child support and ownership of household furniture and possessions, we do not address those arguments presented to the Court of Appeals and decided by them. Questions not brought forward from those properly presented in the Court of Appeals are deemed abandoned. Rule 28(a), N.C. Rules of Appellate Procedure.

We therefore hold that the portion of the Court of Appeals' decision reversing the trial court allowance of permanent alimony is reversed. That part of the trial court order for alimony referring to a "lump sum" payment is vacated. That portion of the

Court of Appeals' decision reversing the trial court allowance of attorney fees and "necessary expenses" is, for the reasons stated, modified and affirmed. The remaining portions of the Court of Appeals' decision are left undisturbed and the case must be remanded to the Court of Appeals for further remand to the District Court, Wake County for further proceedings consistent with that portion of the Court of Appeals' decision relating to child support.

Reversed in part.

Modified and affirmed in part.

Vacated and remanded in part.