NANCY H. TAYLOR v. WILLIAM F. TAYLOR

No. 782DC452

(Filed 6 May 1980)

1. **Divorce and Alimony § 16.9— lump sum payment to dependent spouse—punishment—division of estate**

   The trial court has no power to order the supporting spouse to make a lump sum payment to the dependent spouse either to punish the supporting spouse or to divide his estate.

2. **Evidence § 3.7— judicial notice—market value, liquidity of realty**

   The trial court could not take judicial notice of the market value and liquidity of tracts of real property.

Taylor v. Taylor

**3. Divorce and Alimony § 16.9— lump sum payment to wife—division of husband's estate**

The trial court erred in ordering defendant husband to make a lump sum payment of $50,000 to plaintiff wife where it is apparent that the effect of the court's order would be to force defendant to liquidate, either by sale or mortgage, his only remaining assets having any substantial value, not for the purpose of paying for the maintenance and support of defendant, but in order to effect a division of his estate with her.

**4. Divorce and Alimony § 16.8— finding of dependency by wife—failure to consider husband's inability to maintain accustomed standard of living**

The trial court's conclusion that plaintiff wife is the "dependent spouse" entitled to support was not supported by the findings of fact where the court found that defendant husband's income "is very significantly lower than same has been in the past" and also that "plaintiff is unable to continue to maintain her accustomed station in life," there was no finding or evidence that defendant deliberately depressed his income in an effort to avoid his obligations, and it is apparent that the trial court disregarded defendant's own inability to maintain the station in life to which he was formerly accustomed in its determination of dependency.

**5. Divorce and Alimony § 20.3— attorney fees in alimony action—insufficient findings**

The trial court erred in awarding attorney fees to plaintiff wife in an alimony action where the court made no finding that the wife had not sufficient means whereon to subsist during the prosecution of the suit and to defray the necessary expenses thereof, and the evidence in the record would not support such a finding had it been made.

APPEAL by defendant from *Ward, Judge.* Judgment entered 30 December 1977 in District Court, BEAUFORT County. Heard in the Court of Appeals 26 February 1979.

Plaintiff-wife brought this action to obtain alimony without divorce. Defendant-husband counterclaimed for divorce from bed and board. Plaintiff waived hearing on her motion for pendente lite relief, and the parties consented to trial without jury. Evidence presented at the hearing on the merits held 12 December 1977 shows the following:

The parties, both in their fifties at the time of the hearing, married in 1949 and thereafter lived together until March 1977, when they separated. Their three children are grown. Plaintiff-wife is a graduate of the University of North Carolina with a degree in pharmacy and is licensed as a pharmacist in this State. While she was married and living with defendant, she worked sporadically as a pharmacist on a part-time basis but during that

time was never employed on a full-time basis. Defendant-husband also graduated from the University of North Carolina, with a degree from the School of Commerce, finishing in December 1948. At first, he worked as a traveling salesman. Later, he owned and operated a retail clothing store in Washington, N.C.

The parties own as tenants by the entirety a two-story four-bedroom brick veneer dwelling in Washington, N.C., where they lived for approximately twenty-four years prior to the separation. At the time of the hearing the home was subject to a deed of trust securing a balance of approximately $10,000.00 payable in monthly installments of $189.80. So long as they lived together, defendant-husband paid all family living expenses, including all expenses of the home and of rearing the three children and providing for their college educations. He provided and paid the wages of a maid, who at the time of the hearing had worked for the plaintiff for nineteen years. He paid all dues and expenses for family membership in a country club until he resigned from the club in October 1976. While the parties lived together, plaintiff's earnings from her occasional employment as a pharmacist were spent for gifts and non-essential purposes.

For many years prior to the separation defendant at times drank alcoholic beverages to excess. In September 1976 plaintiff petitioned to have him involuntarily committed as an inebriate to Cherry Hospital, where he remained for eight or nine days and from which he was released after a hearing. He deeply resented plaintiff's initiation of the involuntary commitment proceedings.

In January 1977 defendant sold his retail clothing store for $55,000.00 without previously telling his wife of his intention to sell. In March he left the home in Washington, N.C., and moved to Hookerton, N.C. Plaintiff-wife continued to live in the Washington, N.C. home, and was still living there at the time of the hearing. After the separation and continuing until the time of the hearing defendant-husband continued to pay all monthly mortgage payments and insurance premiums on the home and to pay premiums on liability insurance on the car used by plaintiff-wife and on major medical insurance for her benefit. After their separation he also provided her with $500.00 per month until July 1977, when he ceased making these payments. Plaintiff commenced this action in August 1977.

Following the separation, plaintiff-wife unsuccessfully sought full-time employment as a pharmacist in Washington and in Williamston. At the time of the hearing she was employed one day a week as a licensed pharmacist at the hospital in Williamston, for which she received $153.05 take-home pay every two weeks. She also worked occasionally as relief pharmacist at Revco in Washington, N.C., for which she was paid $72.00 a day, but that employment "would not amount to two weeks a year." In addition to her earnings as a pharmacist and to the $500.00 monthly payments she received from her husband until July 1977, plaintiff had income in the form of rents, interest, and dividends. She owned a 325-acre farm in Bertie County, valued for ad valorem tax purposes at $103,000.00, stocks having a stipulated value of $32,000.00, a passbook savings account containing about $2,000.00, and other bank accounts totalling about $600.00. There was also a $5,000.00 savings and loan certificate in plaintiff's name, but she recognized this as belonging to her 82-year-old mother. Plaintiff received annual rental from her Bertie County farm in the amount of $4,500.00, about $1,000.00 of which was required to pay income taxes and insurance and taxes on the farm. She received dividends from her stocks of approximately $2,000.00 annually.

Defendant testified that he and his wife separated on 2 March 1977 because of marital differences. After his release in 1976 from the involuntary commitment initiated by his wife, he began looking for other employment, although at that time he did not intend to sell his retail clothing business. As dislcosed by his tax returns, that business made a net profit in 1974 of $1,203.00, in 1975 of $6,497.75, and in 1976 of $1,253.15. When a buyer offered him $55,000.00, he sold the business in January 1977. After paying various debts he owed for the store, the monthly mortgage payments on the house, the $500.00 monthly payments to his wife which he made until July 1977, medical and hospital insurance and various other types of insurance, taxes, and his own living expenses of about $6,000.00 in 1977, he had only $30,000.00 left from the sale of his store. This he invested in two certificates of deposit, each in the amount of $15,000.00, one for four years in Seaboard Savings and Loan, and one for six years in North Carolina National Bank.

After selling his retail clothing business, defendant worked for a short time as a sales consultant, from which employment he was fired due to drinking. He then took the examination and received a license to sell insurance and, at the time of the hearing, was working to establish himself in the insurance business. His earned income in 1977 from the new employment totalled about $600.00 or $700.00. In 1973 he inherited from his mother a one-third interest in a farm in Greene County. He had also been given by his father an undivided interest in farm properties in Lenoir County, referred to by defendant as "three-eights of a contract in conjunction with a partnership with my father and sister." Between 1974 and 1977 his annual net income from his farming interests ranged between $9,000.00 and $12,000.00. His other assets included two $1,000.00 bonds and forty shares of stock worth approximately $3.00 per share. In addition to the balance of $10,000.00 owed on the mortgage on the home, he owed $6,000.00 which he had borrowed on his life insurance policies. At the time of the hearing he was living with his father in Hookerton, N.C., contributing his share of the bills but not paying rent. His father had given him an old store building in Hookerton where his grandfather had years ago conducted business. This building, which was unoccupied, was insured for $5,000.00.

Following the hearing, the court entered an order dated 30 December 1977 making extensive findings of fact on the basis of which the court made the following conclusions of law:

1. Defendant is an excessive user of alcohol and has thereby, without provocation by Plaintiff, rendered Plaintiff's condition intolerable and life burdensome.

2. Defendant has, without just cause or provocation, abandoned Plaintiff.

3. Defendant has wilfully failed to provide Plaintiff with necessary subsistence according to his means and condition in life so as to render the condition of Plaintiff intolerable and her life burdensome.

4. Plaintiff is a dependent spouse.

5. Defendant is a supporting spouse.

6. Plaintiff is entitled to recover alimony without divorce of Defendant in an amount reasonably necessary to

provide Plaintiff's maintenance and support in her accustomed station in life and her counsel fees with due regard to the estates, incomes, conditions, capacities and abilities of the parties and the circumstances of this case.

On these conclusions of law, the court awarded plaintiff-wife sole use of the residence and ordered defendant to pay when due all installments on the mortgage indebtedness and all taxes assessed against the residence, to maintain insurance on the residence, to deliver to plaintiff title to the automobile he had previously provided for her use, and to pay plaintiff alimony in a lump sum of $50,000.00, payable $30,000.00 within ten days of entry of the judgment and the balance of $20,000.00 within four months thereafter. The court further ordered defendant to pay counsel fees incurred by plaintiff in the sum of $1,500.00.

From this judgment, defendant appealed.

*Carter, Archie & Grimes by W. B. Carter, Jr. for plaintiff appellee.*

*Mattox & Davis by Fred T. Mattox and Gary B. Davis for defendant appellant.*

PARKER, Judge.

By appropriate assignments of error based on exceptions duly noted, defendant challenges certain of the court's crucial findings of fact as being unsupported by the evidence and challenges in turn all of the court's conclusions of law as being unsupported by the factual findings. Although a number of these assignments of error have merit, we find it unnecessary to pass upon them seriatim. We find the judgment itself, when viewed in the light of all of the evidence, so affected by errors of law that it must be vacated.

G.S. 50-16.1(1) defines "alimony" for purposes of G.S. Ch. 50 as follows:

"Alimony" means payment for the support and maintenance of a spouse, either in lump sum or on a continuing basis, ordered in an action for divorce, whether absolute or from bed and board, or an action for alimony without divorce.

G.S. 50-16.7(a), in pertinent part, provides:

> Alimony or alimony pendente lite shall be paid by lump sum payment, periodic payments, or by transfer of title or possession of personal property or any interest therein, or a security interest in or possession of real property, as the court may order.

[1-3]  Although these statutes authorize the court, in a proper case, to order alimony to be paid in a lump sum, such an award can only be made for "alimony," that is, for "payment for the support and maintenance of a spouse." G.S. 50-16.1(1). The court has no power to order such a payment either to punish the supporting spouse or to divide his estate. *See Schloss v. Schloss,* 273 N.C. 266, 160 S.E. 2d 5 (1968); *Taylor v. Taylor,* 26 N.C. App. 592, 216 S.E. 2d 737 (1975). The lump sum payment of $50,000.00 ordered by the court in the present case appears to be more a division of defendant's estate than it is an award of alimony. Compliance with the order would require not only that defendant pay over to his wife all of his cash assets, being the $30,000.00 remaining from the sale of his business, but would also require that he raise an additional $20,000.00 in cash from his remaining assets. From the evidence, defendant's remaining assets consist primarily of his one-third undivided interest in a farm in Greene County and in his interest in "three-eights of a contract in conjunction with a partnership" with his father and sister in farm properties in Lenoir County. There is no evidence in the record to indicate either what the value of these farm properties might be or how readily defendant's undivided interests therein could be converted into cash. The order appealed from contains the statement "[t]hat the Court takes judicial notice that the above mentioned farm properties not only have a substantial fair market value but afford a ready and accessible source of capital." The market value and liquidity of tracts of real property are not matters of which a court may take judicial notice, and it was error for the court in this case to do so. Moreover, even had there been competent evidence to support factual findings by the court of the matters of which it purported to take judicial notice, it is apparent that the effect of the court's order would be to force defendant to liquidate, either by sale or mortgage, his only remaining assets having any substantial value, not for the purpose of paying for

the support and maintenance of his wife, but in order to effect a division of his estate with her. This the court had no power to do.

In other respects also the court committed error in the order appealed from. G.S. 50-16.1 defines the terms "dependent spouse" and "supporting spouse" as follows:

> (3) "Dependent spouse" means a spouse, whether husband or wife, who is actually substantially dependent upon the other spouse for his or her maintenance and support or is substantially in need of maintenance and support from the other spouse.

> (4) "Supporting spouse" means a spouse, whether husband or wife, upon whom such other spouse is actually substantially dependent or from whom such other spouse is substantially in need of maintenance and support.

In a recent case, *Williams v. Williams*, 299 N.C. 174, 261 S.E. 2d 849 (1980), decided after the trial of the case before us, our Supreme Court discussed the provisions of G.S. 50-16.1 *et seq.* as they relate to a determination of dependency in suits for alimony. The factual situation presented in *Williams* was somewhat unusual, in that two parties of considerable wealth were involved; however, the opinion emphasized that "the principles established by this decision apply to parties of all economic status." 299 N.C. at 189, 261 S.E. 2d at 859.

Interpreting the legislative intent in the enactment of G.S. 50-16.1, subsections (3) and (4), the court held in *Williams* that interpretation of the definition of the term "dependent spouse" contained in G.S. 50-16.1(3) requires that that provision be read *in pari materia* with G.S. 50-16.5, the statute for determining the amount of alimony. G.S. 50-16.5(a) provides that "[a]limony shall be in such amount as the circumstances render necessary, having due regard to the estates, earnings, earning capacity, condition, accustomed standard of living of the parties, and other facts of the particular case." The court then applied the factors of G.S. 50-16.5 to establish guidelines to be used by trial courts in the determination of dependency:

> (1) The parties must have been legally married to each other and one spouse must have been adjudged to have committed one of the grounds for alimony under G.S. 50-16.2 or

have stipulated that one of the grounds is present. These are findings of fact which must be entered into the record by the trial court.

(2) The incomes and expenses measured by the standard of living of the family as a unit must be evaluated from the evidence presented. If this comparison reveals that one spouse is without means to maintain his or her accustomed standard of living, then the former would qualify as the dependent spouse under the phrase "actually substantially dependent." G.S. 50-16.1(3).

(3) If the comparison does not reveal an *actual* dependence by one party on the other the trial court must then determine if one spouse is "substantially in need of maintenance and support" from the other. In doing so, these additional guidelines should be followed:

A. The trial court must determine the standard of living, socially and economically, to which the parties *as a family unit* had become accustomed during the several years prior to their separation.

B. It must also determine the present earnings and prospective earning capacity and any other "condition" (such as health and child custody) of each spouse at the time of hearing.

C. After making these determinations, the trial court must then determine whether the spouse seeking alimony has a demonstrated need for financial contribution from the other spouse in order to maintain the standard of living of the spouse seeking alimony in the manner to which that spouse became accustomed during the last several years prior to separation. This would entail considering what reasonable expenses the party seeking alimony has, bearing in mind the family unit's accustomed standard of living.

D. The financial worth or "estate" of both spouses must also be considered by the trial court in determining which spouse is the dependent spouse. We do not think however, that usage of the word "estate" implies a legislative intent that a spouse seeking alimony who has an estate sufficient to maintain that spouse in the manner to which he or she is ac-

Taylor v. Taylor

customed, *through estate depletion,* is disqualified as a dependent spouse. Such an interpretation would be incongruous with a statutory emphasis on "earnings," "earning capacity," and "accustomed standard of living." It would also be inconsistent with plain common sense. If the spouse seeking alimony is denied alimony because he or she has an estate which can be spent away to maintain his or her standard of living, that spouse may soon have no earnings or earning capacity and therefore no way to maintain *any* standard of living.

\*    \*    \*    \*

E. We further note that G.S. 50-16.1(3), read *in pari materia* with G.S. 50-16.5, in defining dependency, provides for a trial court's consideration of "other facts of the particular case" when awarding alimony. Under this statutory rubric, we feel that consideration should be given to the length of a marriage and the contribution each party has made to the financial status of the family over the years.

299 N.C. at 182-185, 261 S.E. 2d at 855-857.

[4] Applying these principles to the present case, it is apparent from the findings of fact and conclusions of law made that the trial court did consider the standard of living of the parties during the marriage and did make findings as to their earnings as of the time of hearing. However, read together, Finding of Fact No. 23, "[t]hat the Defendant's income from his personal endeavors for the year 1977 is very significantly lower than same has been in the past" and Finding of Fact No. 47, "[T]hat Plaintiff is unable to continue to maintain her *accustomed station in life* and to support herself without assistance from the Defendant" (emphasis added), render it apparent that the trial court disregarded defendant-husband's own inability to maintain the station in life to which he was formerly accustomed. That the trial court did so is also apparent from that portion of the Court's Conclusion of Law No. 6 stating that "[p]laintiff is entitled to recover alimony without divorce of Defendant in an amount *reasonably necessary to provide Plaintiff's maintenance and support in her accustomed station in life.* (Emphasis added.)" The court made no finding, and the evidence would support none, that defendant-husband deliberately depressed his income in an effort to avoid his obligations. Cf.,

*Beall v. Beall,* 290 N.C. 669, 228 S.E. 2d 407 (1976). In the absence of such a finding, the principle which governed the application of the law to the facts in *Williams,* that the accustomed standard of living of the parties measures the needs of the wife in determining dependency, acquires less importance in the present case, the more important principle here being "the present earnings and prospective earning capacity . . . of each spouse at the time of hearing." *Williams* at 183, 261 S.E. 2d at 856. To find on the one hand that defendant-husband's income "is very significantly lower than same has been in the past" and to find on the other that "[p]laintiff is unable to continue to maintain her accustomed station in life", and based thereon to conclude as a matter of law that plaintiff-wife is the "dependent spouse" entitled to support, has the effect of imposing an onerous duty upon defendant-husband to continue to provide his spouse with a style of life which he himself is no longer able to enjoy.

We are, of course, aware that the Court in *Williams* referred to the question of fault in the marital separation and stated that, where the dissolution of the family as an economic unit works hardship on both parties, "the burden of contending with diminished assets should, in all fairness, fall on the party primarily responsible  . . . ." 299 N.C. at 188, 261 S.E. 2d at 858-859. We do not, however, construe that language to mandate the conclusion that a party at fault is a "supporting spouse" without regard to the possibility that he or she must now endure a diminished standard of living because of reduced earnings. Thus, although the pre-existing standard of living is certainly a significant factor in determining dependency, the present earnings, earning capacity, reasonable expenses and other conditions of each party which may have modified that standard certainly must be taken into account.

[5]  We also find error in the court's award of attorney fees. "The clear and unambiguous language of G.S. 50-16.3 and 16.4 require that to receive attorney's fees in an alimony case it must be determined that (1) the spouse is entitled to the relief demanded; (2) the spouse is a dependent spouse; and (3) the dependent spouse has not sufficient means whereon to subsist during the prosecution of the suit and to defray the necessary expenses thereof." *Hudson v. Hudson,* 299 N.C. 465, 473, 263 S.E. 2d 719, 724 (1980). All three of these determinations must be made in order to sup-

port an award of attorney fees. The court in the present case, however, failed to make the third finding. The evidence in the present record would not support such a finding had it been made. It was error to make any award of attorney fees in this case.

The order appealed from is vacated, and the case is remanded for further proceedings not inconsistent herewith and consistent with the guidelines noted in *Williams v. Williams.*

Vacated and remanded.

Judges HEDRICK and ERWIN concur.