HENRY B. ROWE v. MARY W. ROWE

No. 8017DC904

(Filed 7 July 1981)

**1. Divorce and Alimony § 19.3— modification of alimony order—changed circumstances**

The change of circumstances required by G.S. 50-16.9 for modification of an alimony order refers to those circumstances listed in G.S. 50-16.5 which deals with the initial determination of alimony.

Rowe v. Rowe

**2. Divorce and Alimony § 19.3— alimony award— changed circumstances**

Where plaintiff sought to modify an alimony award based on changed circumstances, the trial court's failure to consider, or to make findings of fact on, the ratio of defendant's earnings to her needs constituted error, and the court should have found as a fact that defendant's earnings exceeded her needs and concluded therefrom that there had been a change in circumstances.

**3. Divorce and Alimony § 19.4— modification of alimony order—changed circumstances—sufficiency of evidence**

Where defendant testified that her independent income, $50,000, was well over what she spent for living expenses, $32,647, the evidence established a change of circumstnaces requiring a modification of an alimony order to reflect a finding that defendant was not a dependent spouse and to vacate the award of alimony.

**4. Divorce and Alimony § 19.5— consent order for alimony—no estoppel to seek modification**

Plaintiff was not estopped to seek modification of an alimony order by his contractual agreement that the parties' consent order would not be modifiable, since the agreement of the parties could not be elevated above the public policy of the State, as expressed by the legislature in G.S. 50-16.9, that an order to pay alimony should be modifiable, and the courts may not be estopped by an agreement of the parties from the exercise of the jurisdiction to modify an alimony order, which the court generally retains upon adoption of the parties' agreement as its own order.

**5. Divorce and Alimony § 19.5— alimony order as part of the property settlement—insufficiency of evidence**

There was no merit to defendant's argument that the trial court lacked power to modify the parties' consent order providing for payment of alimony by plaintiff to defendant because the order was an integral part of the parties' property settlement, since the proximity in time between entry of the order granting alimony, which made no reference to a property settlement, and judgment granting an absolute divorce, which made no reference to a property settlement, had no tendency to prove that the order was a part of a property settlement; a letter from plaintiff's attorney to defendant's attorney embodying settlement negotiations was inadmissible, and even if admitted, would not have indicated that the alimony provision was reciprocal consideration for the property division; and defendant did not produce any other evidence that the provision contained in the parties' consent order was intended by them to be only a part of their overall property settlement.

**6. Divorce and Alimony § 19.5— agreement to pay alimony— modification**

An agreement to pay alimony may be adopted by the court as its own order, modifiable and enforceable by contempt, or it may simply be approved or sanctioned by the court, not modifiable except in certain circumstances and not enforceable by contempt.

**7. Divorce and Alimony § 18.16— modification of alimony award—failure to award attorney's fees proper**

   In a hearing on plaintiff's motion for modification of an alimony order, the trial court did not err in failing to award defendant attorney's fees, since the court's finding that defendant's non-alimony income in the previous year was approximately $54,000 established that it was possible for defendant to employ adequate counsel, and an award of counsel fees was not necessary to enable her to meet the husband on substantially even terms.

   Judge VAUGHN dissenting.

   APPEAL by both parties from *McHugh, Judge.* Order entered 30 April 1980 in District Court, SURRY County. Heard in the Court of Appeals 2 April 1981.

   The parties were divorced in 1976. Concurrent with the divorce, the following order was entered in District Court on 6 December 1976:

   "THIS CAUSE COMING ON TO BE HEARD and being heard before his Honor, Foy Clark, District Court Judge holding the District Courts of the Seventeenth Judicial District and it appearing to the Court by the stipulations of the parties and the Court finding as a fact the following:

   1. THAT the parties stipulate and agree that the Plaintiff is a supporting spouse; that the Defendant is a dependent spouse; that the Defendant is entitled to alimony under the provisions of North Carolina General Statutes 50-16.2; that the sum of $2,500.00 per month is an appropriate amount of alimony; that the Plaintiff has the assets and earning capacity to generate sufficient income to enable the Plaintiff to pay to the Defendant the sum of $2,500.00 per month as permanent alimony and that the parties desire that an Order be entered in accordance with their stipulations providing for the payment by Plaintiff to Defendant of permanent alimony in the sum of $2500.00 per month and subject to the further condition that the Order for alimony shall not be subject to modification upon a showing of change of circumstances by either party or anyone interested as is provided by North Carolina General Statutes 50-16.9(a); and

   2. THAT the Court does find as fact that the Defendant is a dependent spouse actually substantially dependent upon

the Plaintiff for her maintenance and support and that the Plaintiff is a supporting spouse; that the defendant is entitled to permanent alimony from the Plaintiff; that the sum of $2,500.00 per month is a reasonable and proper amount of permanent alimony for the Plaintiff to pay to the Defendant; that the Plaintiff has assets and earning capacity to generate sufficient income to enable the Plaintiff to pay to the Defendant the said sum of $2,500.00 per month as permanent alimony; and that the parties desire that the within order for alimony shall not be subject to modification upon a showing of change of circumstances by either party or anyone interested as is provided in North Carolina General Statutes 50-16.9(a).

NOW THEREFORE, by consent of the parties it is hereby ordered that the Plaintiff pay to the Defendant for permanent alimony the sum of $2,500.00 per month, said payments to be due on or before the 5th day of each and every calendar month and to terminate only upon the death of either of the parties or the remarriage of the Defendant, which ever event shall first occur, and it is further ordered that the within order shall not be subject to the provisions of North Carolina General Statutes 50-16.9(a).

> s/ FOY CLARK
> District Court Judge
> Seventeenth Judicial District

CONSENTED TO:

s/ HENRY B. ROWE
Plaintiff

s/ FRED FOLGER, JR.
of Folger & Folger, Attorney
for Plaintiff

s/ MARY W. ROWE
Defendant

s/ D. M. SHARPE,
of Faw, Folger, Swanson & Sharpe
Attorney for Defendant"

On 19 October 1979 Plaintiff in the original action, Henry Rowe, filed a motion to modify the above order to terminate or reduce his alimony obligation for changed circumstances. Specifically, plaintiff alleged that defendant, Mary Rowe, had acquired substantial property since entry of the original order and that her needs had materially decreased, while his own financial burdens had increased and his ability to make the monthly payments were steadily decreasing.

On 13 November 1979 defendant moved for judgment on the pleadings or, in the alternative, for summary judgment. One week later, and before a ruling on defendant's motions, defendant filed her response to plaintiff's motion for modification.

Defendant's response alleged that plaintiff had waived his right to seek modification; that plaintiff was estopped from seeking a modification; that the order of 6 December 1976, as a consent order, represented a contract between the parties which the court could enforce, but not modify; and that the court was prohibited by its own order from modification thereof. The response further denied that the circumstances of the parties had changed. Both parties submitted briefs and proposed orders. The court entered the following order:

> "THIS CAUSE coming on to be heard on November 20, 1979, and being heard upon defendant's motion to dismiss plaintiff's motion for modification of the consent order entered December 6, 1976, and the Court having heard argument from counsel for both parties and having considered briefs filed by both parties, has concluded that the December 6, 1976, order is modifiable as provided by G.S. Sec. 50-16.9(a), it is therefore
>
> ORDERED that defendant's motion to dismiss, or in the alternative, for summary judgment, is denied.
>
> Signed and ORDERED entered this 11 day of December, 1979.
>
> s/ FOY CLARK
> Judge Presiding"

Defendant objected and excepted to the entry of the order.

In March and April defendant supplemented her response to allege that the order of 6 December 1976 was not modifiable because it was an inseparable part of the property settlement of the parties entered into at the same time and amended her estoppel defense to allege the existence of a letter from plaintiff's attorney to her attorney which would establish plaintiff's estoppel by contract. At the hearing, testimony was limited to that of the two parties, Mrs. Rowe's accountant, and a real estate appraiser.

The only evidence necessary to the decision of this appeal was not in conflict. Accordingly, we rely on the following findings of fact, deleting that portion of Finding III with which plaintiff takes issue:

"III. At the time of the entry of the December 6, 1976 Consent Order, the Defendant had a net worth of approximately 1.1 million dollars. While she had no substantial income at that time, she owned 66.91% of the outstanding capital stock of a closely held corporation, Northwestern Equipment Company ('Northwestern'), which stock had an approximate fair market value of $847,000.00. Unappropriated retained earnings in Northwestern were, at or about the time of the entry of the aforesaid Consent Order, approximately $698,000.00, and the assets of said corporation included cash in the approximate amount of $179,000.00. At or about the time said Consent Order was entered, the Plaintiff offered to purchase Defendant's stock in Northwestern for at least the sum of $600,000.00, an offer which the Defendant declined to accept. Both parties were aware of Northwestern's financial condition at that time. . . .

. . . .

IV. Defendant's present reasonable living expenses are greater than her reasonable living expenses at the time of the entry of the aforesaid Consent Order on December 6, 1976.

V. On December 6, 1976, the Plaintiff had a net worth of approximately 1.2 million dollars. At that time, he had a gross annual income of approximately $105,000.00. His living expenses at that time were approximately $6,100.00 per month.

VI. On or about September 1, 1978, the Defendant sold her stock in Northwestern to H. B. Rowe & Co., Inc., a closely held corporation substantially owned by the Plaintiff and controlled by him, for the sum of $700,000.00 cash. From the sales proceeds, the Defendant paid approximately $250,000.00 in taxes, fees and other expenses associated with the sale. She immediately converted the net proceeds of approximately $450,000.00 into bonds and securities. This entire transaction did not constitute the acquisition of an asset by the Defendant; rather, it amounted to the liquidation or conversion of an asset.

VII. The Defendant's present net worth is approximately $850,000.00. The decrease in Defendant's net worth from December of 1976 is substantially attributable to: (1) the decline in the fair market value of her Northwestern stock between December of 1976 and September 1, 1978, the date it was sold; and (2) the tax consequences and other expenses incidental to the sale of her Northwestern stock.

VIII. Aside from her alimony income from the Plaintiff, the Defendant's present income is derived almost entirely from the bonds and securities which she purchased with the liquidation proceeds obtained from the aforesaid stock sale. Defendant's nonalimony income in 1979 was approximately $54,000.00.

IX. The Plaintiff presently has a net worth in excess of two million dollars. In addition, his taxable income has increased since 1976, and for the calendar year ending December 31, 1979, was approximately $160,000.00. While his monthly living expenses have increased from $6,100.00 per month in December, 1975, to $8,100.00 per month at the present time, approximately $1,800.00 per month of that increase is directly attributable to support of his new wife and her adult children."

In her affidavit of financial standing, admitted into evidence as defendant's exhibit 16, defendant avers that her financial needs as of 10 April 1980 amounted to $2,720.59 per month, which would amount to $32,647.08 per year. She claimed $7,000.00 income per month ($84,000.00/year) including $2,500.00 per month ($30,000.00/year) in alimony from plaintiff. In plaintiff's exhibits 1

and 2, plaintiff projects expenses of $33,000.00 for defendant in 1980 and lists expenses for the previous four years, the highest being 1978 when defendant's expenses amount to $37,101.24.

In her testimony at the hearing defendant stated:

"Yes, it would be fair to say that even without any alimony that my husband pays me current today, my separate income is well over what I spend for living expenses. No, that was not true on December 6, 1976. No, I had no appreciable, separate income prior to December 6, 1976."

On the foregoing evidence the court found no change of circumstances sufficient to warrant modification of the order of 6 December 1976. Defendant was denied attorney's fees for defending plaintiff's motion in the cause. Both parties appealed.

*Smith, Moore, Smith, Schell & Hunter by Jack W. Floyd and Jeri C. Whitfield for plaintiff appellant.*

*Tuggle, Duggins, Meschan, Thornton & Elrod by David F. Meschan for defendant appellant.*

CLARK, Judge.

Plaintiff's assignments of error may be lumped together and treated as one. He excepts to the conclusion of the trial court that there had not been "a change in the circumstances of the parties which would warrant or justify a modification in the Plaintiff's favor of the December 6, 1976 Consent Order, and argues that the evidence required findings of fact which would have mandated the conclusion that defendant was no longer in need of his maintenance and support. We will address first this crucial issue.

The evidence at the hearing on plaintiff's motion in the cause supported the following material findings of fact: (1) In 1976 defendant's expenses exceeded $11,000.00 and her income from sources other than alimony was less than $9,000.00. (2) In 1979 defendant's expenses were $21,000.00 and her income from sources other than alimony exceeded $54,000.00. (3) In 1980 defendant's anticipated expenses were $33,000.00 and her anticipated income from sources other than alimony exceeded $51,000.00. Defendant herself admitted in her testimony that "my separate income is well over what I spend for living expenses. No,

that was not true on December 6, 1976." The General Statutes provide:

> "50-16.9. *Modification of order.* — (a) An order of a court of this State for alimony or alimony pendente lite, whether contested or entered by consent, may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party or anyone interested."

We fail to see how a change of circumstances could be more clearly established. The few cases which comment on such an eventuality agree that an increase in the dependent spouse's income would entitle the supporting spouse to petition for modification of the alimony order under G.S. 50-16.9. *Williams v. Williams*, 299 N.C. 174, 261 S.E. 2d 849 (1980); *Sayland v. Sayland*, 267 N.C. 378, 148 S.E. 2d 218 (1966).

[1] Defendant in her argument seeks to draw a distinction between cases decided under G.S. 50-16.5 and G.S. 50-16.9. We realize that these statutes are concerned with separate matters — the first with the initial determination of alimony, the second with the modification of a prior alimony order; nonetheless, we fail to see how a change of circumstances under G.S. 50-16.9 can be determined without resort to the test outlined in G.S. 50-16.5. G.S. 50-16.9 allows modification for change of circumstance, but lists no circumstances. G.S. 50-16.5 provides a list of circumstances to be regarded in the initial determination of alimony. We believe the only logical construction of G.S. 50-16.9 is that it requires application of the G.S. 50-16.5 standards again at the time of the modification hearing. If the relevant circumstances in G.S. 50-16.5 list differ materially at that time from the circumstances which obtained at the time the initial order was entered, G.S. 50-16.9 authorizes the judge to modify the order to more fairly accommodate the present circumstances of the parties. This construction adheres to the sound rationale of *Williams v. Williams, supra,* that statutes such as G.S. 50-16.1 through -16.10, since they deal with the same subject matter (alimony), must be construed *in pari materia.* We hold that the "change of circumstances" in G.S. 50-16.9 refers to those circumstances listed in G.S. 50-16.5. "For us to hold otherwise would be to completely ignore the plain language of G.S. 50-16.5 and the need to construe our alimony statutes *in pari materia.* This we are unwilling to do." *Williams v. Williams, Id.* at 181, 261 S.E. 2d at 855.

[2]   The findings of fact in the order denying plaintiff's motion in the cause concentrate primarily on defendant's net worth, yet our case law makes clear "that the trial court consideration of the 'estates' of the parties is intended *primarily* for the purpose of providing it with another guide in evaluating the *earnings* and earning capacity of the parties . . . ." *Williams v. Williams*, 299 N.C. at 184, 261 S.E. 2d at 856. (Emphasis added). Of course, it would similarly be error for the court to order a modification based solely on a change in the earnings of the parties. *Britt v. Britt*, 49 N.C. App. 463, 271 S.E. 2d 921 (1980). A modification should be founded upon a change in the overall circumstances of the parties. A change in income alone says nothing about the total circumstances of a party. The significant inquiry is how that change in income affects a supporting spouse's ability to pay or a dependent spouse's need for support. The trial court should have considered the *ratio* of defendant's earnings to the funds necessary to maintain her accustomed standard of living. *See Williams v. Williams, supra.* If, as all the evidence at the hearing tends to show, defendant's needs exceeded her earnings at the time of the initial order, but defendant's earnings exceeded her needs at the time of the hearing, it becomes an irresistible conclusion that the material circumstances of the defendant have changed. The court's failure to consider, or to make findings of fact on, the ratio of defendant's earnings to her needs constitutes error. The court should have found as a fact that defendant's earnings now exceed her needs, and concluded therefrom that there has been a change in circumstances.

[3]   While we are aware of authority to the effect that "minor fluctuations in income" alone do not require modification of alimony for changed circumstances, *Britt v. Britt, supra,* we believe the change of circumstances under the facts of this case is so extreme that we fail to see how defendant is dependent and thus entitled to any amount of alimony. Under the guidelines set out in *Williams v. Williams*, 299 N.C. at 182-84, 261 S.E. 2d at 855-56, we see no way that defendant could reasonably be called a dependent spouse at the time of the hearing on modification. A woman who requires by her own testimony $32,647.08 annually ($2,720.59 per month) to maintain her standard of living and who receives independent annual income in excess of $50,000.00 cannot be considered "actually substantially dependent," nor can she be

"substantially in need of maintenance and support." See G.S. 50-16.1(3). Defendant's argument that the court's initial determination of dependency is not subject to reconsideration on a subsequent motion under G.S. 50-16.9 is untenable. As we have explained herein, G.S. 50-16.9 calls for a completely new examination of the factors which necessitated the initial award of alimony in order to determine whether any of these circumstances have changed. When the list of circumstances enumerated in G.S. 50-16.5 is properly employed, the conclusion is inescapable that defendant, although formerly dependent, is no longer so. Certainly one of the ultimate circumstances which might change under G.S. 50-16.9, would be the defendant's condition of dependency. We hold that as a matter of law based on the undisputed fact that, as defendant herself has stated, her "separate income is well over what [she] spend[s] for living expenses," the evidence established a change of circumstances requiring modification of the consent order to reflect a finding that defendant is not a dependent spouse and to vacate the award of alimony. We leave intact that portion of the consent order wherein the court found, pursuant to the parties' agreement, that there were grounds for alimony under G.S. 50-16.2. Defendant may, therefore, still seek modification of the order under G.S. 50-16.9 should her circumstances change such that she once again is substantially in need of plaintiff's support and maintenance. She may rely on the finding of entitlement in the consent order as *res judicata* and need only establish her dependency.

Defendant argues that the 6 December 1976 order was not modifiable under G.S. 50-16.9 for two reasons: (1) plaintiff was estopped by his contractual agreement that the Consent Order would not be modifiable, and (2) the agreement to pay alimony was an integral part of the property settlement of the parties which could not be modified by the court.

[4] The estoppel argument is without merit. By sustaining the argument we would elevate the agreement of the parties above the public policy of the State, as expressed by the legislature in G.S. 50-16.9, that an Order to pay alimony should be modifiable. Defendant seeks, we realize, to estop plaintiff from moving for modification rather than to enforce the alimony order as originally written; nevertheless, the result she seeks is the same — a result diametrically opposed to the obvious intent of G.S. 50-16.9.

We will not allow public policy to be thus circumvented. We endorse the following soundly reasoned statement of the Supreme Court of Rhode Island:

> "The respondent's agreement in advance not to appeal under any circumstances to the court for the exercise of the jurisdiction conferred by said section 5 is an attempt, before any cause arises, to oust the court of the jurisdiction, which the Legislature declared shall always exist, and is void as being against the policy of the law. It is one thing for a person to agree, after the circumstances have arisen, to settle the dispute without resort to the courts. It is a different matter for him to attempt to bind himself in advance not to appeal to the courts regardless of what circumstances may arise. The right to appeal to the Superior Court for the modification of a decree for alimony was given not only for the protection of persons obligated by decrees to pay alimony but also for the well-being of society. The legislature on a change of policy may withdraw the privilege granted, but while the right exists the individual cannot barter it away — even with the approval of the court.
>
> . . . .
>
> The power of legislation resides in the legislature and not in the courts. When a decree for alimony purports to take from an individual the right given by statute to apply for modification of the decree, the court has, without authority, attempted to abrogate the will of the legislature and supersede the statutory law by decree of the court. It is elementary that courts can not thus encroach on the legislative domain. There are numerous decisions which hold that a court can not, by consent decrees or otherwise, divest itself of the power conferred by statute to modify decrees for alimony, and we have been referred to no authority to the contrary. *Blake v. Blake*, 75 Wis. 339; *Southworth v. Treadwell*, 168 Mass. 511; *LeBeau v. LeBeau*, (N.H.) 114 Atl. 28; *Wallace v. Wallace*, 74 N.H. 256. See also, *Soule v. Soule*, 4 Cal. App. 97."

*Ward v. Ward*, 48 R.I. 60, 65-66, 135 A. 241, 243 (1926). Although the issue in *Ward* was waiver rather than estoppel, we see no reason for a different result to obtain, particularly where, as here,

the true issue is not whether a party may do a certain thing, but whether the judiciary may exercise the jurisdiction with which the legislature has invested it. Surely the courts may not be estopped by the agreement of the parties from the exercise of the jurisdiction to modify an alimony order, which it retains generally upon adoption of the parties' agreement as its own order, *Bunn v. Bunn*, 262 N.C. 67, 136 S.E. 2d 240 (1964), and which the legislature has specifically approved by its adoption of G.S. 50-16.9. Defendant's assignments of error are overruled to the extent they are based on estoppel by contract.

[5]   In support of her property settlement argument defendant correctly points out that the court would lack power to modify the consent order if it were an integral part of the parties' property settlement. *Bunn v. Bunn, supra, White v. White*, 296 N.C. 661, 252 S.E. 2d 698 (1979); *see also* Note, *Presumed Separability of Support and Property Provisions in Ambiguous Separation Agreements*, 16 Wake Forest L. Rev. 152 (1980) [hereinafter *Presumed Separability*]. Alimony provisions are presumed separable from provisions for property settlement, and therefore modifiable, even when both appear in the same document. *White v. White, supra; see* Note, *Presumed Separability, supra*, at 164-68. In the face of this presumption, a party opposing modification must establish by a preponderance of the evidence that the provision for alimony contained in the order of 6 December 1976 was intended by the parties to be only a part of their overall property settlement. *White v. White*, 296 N.C. at 672, 252 S.E. 2d at 704. This defendant has failed to do.

Defendant argues that two factors establish that the alimony provision was an inseparable portion of the property agreement. One is the fact that the parties' divorce decree was entered the day following the entry of the consent order. We fail to see how the proximity in time between entry of an order which grants alimony, making no reference to a property settlement, and a judgment which grants an absolute divorce, making no reference to a property settlement, has any tendency to prove that the order was a part of a property settlement. This so-called "factor" tends to prove nothing about the alleged property settlement. The second factor which defendant alleges supports her case for inseparability and, therefore, non-modifiability, is a letter dated 18 November 1976 from plaintiff's then attorney to defendant's

then attorney. The opening paragraph of this letter recites: "I have talked with Henry Rowe again in an effort to settle all matters existing between Henry and Mary. At this time, by way of offer of compromise and settlement on Henry's behalf, I wish to advise the following:" Thereafter appears a list of 11 separately numbered items including: "3. Henry will pay to Mary alimony at the rate of $2,500.00 per month until her death or remarriage. In any event, this payment would terminate at Henry's death." This letter was quite properly excluded from evidence as an offer of compromise and settlement. *Mahaffey v. Sodero*, 38 N.C. App. 349, 247 S.E. 2d 772 (1978); *Hood v. Hood*, 24 N.C. App. 119, 209 S.E. 2d 881 (1974). *See* 2 Stansbury's N.C. Evidence § 180 (Brandis rev. 1973). We uphold the trial court's exclusion from evidence of the letter of 18 November 1976 as embodying inadmissible settlement negotiations. We note further that even had the letter been admitted, its alimony provision is entirely separate from the other provisions for property division. Nothing in the letter recites, or even hints, that the alimony provision is reciprocal consideration for the support provision. The fact that the support provision appears in the same letter with the property provisions would no more rebut the presumption of separability than did the fact in *White* that the support provision appeared in the same consent judgment with the property provision. Therefore, even if the letter had been admitted as the full and final property settlement and support agreement, which it clearly was not, defendant would still be faced with the burden of producing a preponderance of evidence that the provisions therein were inseparable. Defendant fails to produce one scintilla of such evidence.

Defendant also excepts to the sustention of plaintiff's objection to the following question about the agreement in the Consent Order that the order not be subject to modification: "Mr. Meschan: How do you recall that provision got into that order in the negotiating process?" Again defendant's question was addressed to the negotiating process, rather than to the agreement itself. "Any or all parts of a transaction prior to or contemporaneous with a writing intended to record them finally are superseded and made legally ineffective by the writing." 2 Stansbury's N.C. Evidence § 251 (Brandis rev. 1973). " 'Accordingly, all prior and contemporaneous negotiations in respect to those

elements [dealt with in the writing] are deemed merged in the written agreement.'" *Tomlinson v. Brewer*, 18 N.C. App. 696, 700, 197 S.E. 2d 901, 904, *cert. denied*, 284 N.C. 124, 199 S.E. 2d 663 (1973). Additionally, we note that this inquiry had no relevance. Defendant's burden was to show the intent of the parties concerning the alimony provision. The inquiry before us went to the intent of the parties concerning the non-modification provision and had no tendency to prove the parties' intentions in any other matter.

Defendant was free to inquire into the intention of the parties that the support provision in the Consent Order be reciprocal consideration for the property division of the parties. This defendant failed to do. She chose rather to inquire into incidental, collateral, irrelevant, and inadmissible matters. We uphold the trial court's exclusion of these matters.

[6]   Agreements to pay alimony such as the one in the Consent Order before us may be adopted by the court as its own orders or they may simply be approved or sanctioned by the court. *Bunn v. Bunn*, 262 N.C. 67, 136 S.E. 2d 240 (1964). There exists a very clear distinction between the incidents of the two different kinds of consent orders:

> "This distinction was addressed in 1964 in the landmark case of *Bunn v. Bunn*. There the court held that a contract-consent judgment not adopted as an order, but merely approved or sanctioned by the court, cannot be modified or set aside except upon: (1) the consent of both parties; (2) a finding that the agreement was unfair to the dependent spouse; or (3) a finding that the dependent spouse's consent was obtained by fraud or through mutual mistake. In contrast, the alimony provision of a court-adopted consent judgment is modifiable or enforceable by the court's contempt power should the supporting spouse willfully fail to pay because the court's decree supersedes the parties' agreement."

Note, *Presumed Separability, supra*, at 158-59.

The parties had it in their power to enter into a Consent Order which could not be modified by the courts. Such an order, however, would not have been enforceable by contempt. The order of 6 December 1976 appears to have been an attempt to

Rowe v. Rowe

create a consent order enforceable by contempt but not modifiable. "If the judgment can be enforced by contempt, it may be modified and vice versa. This is only just." *Bunn v. Bunn*, 262 N.C. at 70, 136 S.E. 2d at 243. We refuse to enforce an effort to circumvent the justice of this rule.

[7] Defendant's final argument, that the court erred in failing to award her attorney's fees, is meritless. The court's finding that defendant's non-alimony income in 1979 was approximately $54,000.00 established that it was possible for her to employ adequate counsel. We hold that in this case, as in the *Williams* case, "It is clear from the record before us that an award of counsel fees was not necessary to enable [the wife], as litigant, to meet [the husband], as litigant, on substantially even terms by making it possible for her to employ counsel." *Williams v. Williams*, 299 N.C. at 190, 261 S.E. 2d at 860; *see also Hudson v. Hudson*, 299 N.C. 465, 263 S.E. 2d 719 (1980).

We have examined the remainder of the assignments of error and arguments of both parties and find them either meritless or disposed of by the issues decided herein.

In summation, we find that the conclusion of the trial court that there was no change of circumstances is not supported by the evidence, and that as a matter of law there was a change of circumstances under G.S. 50-16.5. We further find that the trial court erred in not making more specific findings of fact relative to defendant's costs in maintaining her accustomed standard of living, *i.e.*, $32,647.08 per year according to her affidavit. Such findings of fact would provide a basis for determining in the future if there were a change of circumstances after entry of such modified order should the defendant thereafter seek alimony on the grounds that changed circumstances had again made her a dependent spouse. These corrections can adequately be made by the court without further hearing, it appearing from the record on appeal that the uncontradicted evidence before the trial court is sufficient to support modification of the order. This cause is remanded for findings and entry of an order consistent with this opinion.

Affirmed in part; vacated in part and remanded.

Judge WELLS concurs.

Judge VAUGHN dissents.

Judge VAUGHN dissenting.

On defendant's appeal, I would sustain her assignments of error except the one relating to counsel fees which I too would reject. I would, however, hold plaintiff to his bargain and not allow him to succeed in seeking modification of the order. I do not agree that, on the facts of this case, there is any circumvention of public policy in this position. Indeed, sound public policy would seem to support defendant's position. Even if the judgment should be held to be modifiable, I would affirm that part of Judge McHugh's order wherein he declined to do so. The facts of this case do not disclose the kind of change of circumstances that require a reduction in alimony.