CECIL JEANETTE WALTERS v. MELVIN ROYCE WALTERS

No. 8126DC255

(Filed 17 November 1981)

**Divorce and Alimony §§ 16.10, 19.5— award of "alimony" part of complete property settlement—error to find payments ended upon remarriage**

The trial court erred in concluding plaintiff's award pursuant to a consent judgment constituted "alimony," invoking the provisions of G.S. 50-16.9(b) requiring termination of her "alimony" upon remarriage, rather than a part of a complete property settlement where (1) the preamble to the consent judgment stated that the parties "had settled and compromised the differences between them," (2) the parties expressly agreed that the payments would continue "regardless of whether or not the parties are divorced or the plaintiff should remarry," (3) the parties agreed that the plaintiff would be permitted to use defendant's motor vehicle "until the first periodic payment" was made thereby combining elements of both the payment and property division provisions, (4) the only indicia of alimony in the provisions of the consent judgment was the word itself appearing therein, and (5) the parties stipulated that the payments would be treated as "alimony" for tax purposes indicating a convenient characterization and a device used by them for tax advantages only.

APPEAL by plaintiff from *Black, Judge.* Order entered 18 December 1980 in District Court, MECKLENBURG County. Heard in the Court of Appeals 15 October 1981.

*Thomas, Harrington & Biedler, by Larry E. Harrington; and Thomas D. Windsor, for plaintiff-appellant.*

*James, McElroy & Diehl, by William K. Diehl, Jr., for defendant-appellee.*

HILL, Judge.

Plaintiff and defendant entered into a consent judgment on 4 October 1978 which represented "that they had settled and compromised the differences between them . . .." With the parties' consent, the court "ORDERED, ADJUDGED AND DECREED" the following:

1. The defendant, Melvin Royce Walters, is hereby ordered and directed to pay to the plaintiff, Cecil Jeanette Walters, said payments to constitute alimony, the sum of One Thousand ($1,000.00) Dollars per month, beginning October, 1978, and continuing for sixty-two (62) months thereafter, for

a total of sixty-three (63) payments, said payments to be made quarterly in advance, commencing October 1st, 1978, and the quarterly payments thereafter to be payable on January 1st, April 1st and July 1st, and October 1st of each successive year until all of the payments shall have been made, provided, however, the defendant, Melvin Royce Walters, shall be allowed six (6) weeks following the due date of any payment in which to make the same without being in default of the provisions of this Order.

2. The defendant, Melvin Royce Walters, will simultaneously with the entry of this Judgment execute a fee simple warranty deed for all of his right, title and interest in and to that real estate located in Burnsville Township, that was conveyed to the parties to this action by deed dated January the 23rd, 1968, and recorded in Deed Book 160, page 636, Registry of Anson County. This conveyance, however, shall be subject to any outstanding liens and ad valorem taxes existing at the time of the conveyance.

3. It is further ORDERED that the provisions of this Judgment shall be enforceable by contempt proceedings.

4. It is further ORDERED that the plaintiff, Cecil Jeanette Walters, be permitted to use and enjoy that certain motor vehicle heretofore provided her by her husband until the first periodic payment as herein provided is made.

5. It is understood that the payments as herein provided shall be made by the defendant to the plaintiff regardless of whether or not the parties are divorced or the plaintiff should remarry during said period of time.

It was stipulated that at this time the parties agreed that defendant would deduct as "alimony" on his tax return the payments he made pursuant to the consent judgment. However, no deductions were taken until 1979. Plaintiff reported the payments received as "alimony" income in 1978.

Defendant made payments in accordance with the provisions of the consent judgment for three months, then he unilaterally reduced the payments to $500. On 20 August 1979 the parties agreed to a court order requiring payments by defendant to plaintiff of $500 per month for 101 months, modifying a portion of the

consent judgment. The remainder of the consent judgment continued in full force and effect. Plaintiff remarried on 19 April 1980.

Defendant refused to pay plaintiff under the provisions of the consent judgment upon plaintiff's remarriage, and she prayed the court jail defendant, in exercise of its civil contempt powers, for his willful refusal to comply with those provisions. Thereafter, defendant moved to terminate the payments provided by the consent judgment on the grounds that such payments were "alimony" in character, that plaintiff's remarriage was a substantial change of circumstances justifying termination of payments, and that because of her remarriage, plaintiff is now fully supported by her present spouse.

The court found facts and concluded that plaintiff's award was "alimony," that plaintiff's remarriage invoked the provisions of G.S. 50-16.9(b) requiring termination of her "alimony" upon remarriage—"language contained in [the consent judgment] to the contrary notwithstanding," that the payment provisions "are not so intertwined with a property settlement of the parties as to prevent them from being modified," that "[t]his alimony award" could be modified upon a proper showing and enforced by the contempt powers of the court, and that "plaintiff's wife has not offered sufficient proof by a preponderance of the evidence that the court award of alimony payments somehow merged with a part of some property settlement between the parties."

The court ordered that plaintiff's contempt motion be denied and dismissed with prejudice, and that defendant's motion to "terminate alimony payments . . . by reason of plaintiff's remarriage" be allowed. Plaintiff appeals from this order.

There are two requirements for a court to have power to modify a consent judgment: First, that the consent judgment be an order of the court; and, second, that the order be one to pay alimony. *White v. White*, 296 N.C. 661, 252 S.E. 2d 698 (1979). *See* G.S. 50-16.9(a). Since the quoted language of the consent judgment in the case *sub judice* clearly indicates that it is an order of the court, our inquiry is directed to the alimony requirement.

Even though denominated as such, support payment provisions may not be alimony, and thus modifiable, if those provisions

and other provisions for a property division between the parties constitute "a *complete* settlement of all property and marital rights between the parties . . .." *Bunn v. Bunn,* 262 N.C. 67, 70, 136 S.E. 2d 240, 243 (1964) (emphasis original). Furthermore, where those provisions "constitute a reciprocal consideration so that the entire agreement would be destroyed by a modification of the support provision, they are not separable and may not be changed without the consent of both parties." *Id., quoted in White v. White, supra* at 666-67, 252 S.E. 2d at 701. Thus, the question is whether the payment provisions of the consent judgment are modifiable alimony provisions independent of and separate from the property division provisions of the consent judgment.

Our construction of the provisions of the consent judgment in the case *sub judice* is governed by the principles expressed in *Allison v. Allison,* 51 N.C. App. 622, 627, 277 S.E. 2d 551, 554-55 (1981), wherein Judge Whichard, speaking for this Court, wrote:

> Our Supreme Court has stated in *White v. White,* 296 N.C. 661, 667-668, 252 S.E. 2d 698, 702 (1979):
>
> > The answer depends on the construction of the consent judgment as a contract between the parties. "The heart of a contract is the intention of the parties. The intention of the parties must be determined from the language of the contract, the purpose of the contract, the subject matter and the situation of the parties at the time the contract is executed." (Citation omitted.)
>
> If the consent judgment "is clear and unambiguous and leaves no room for construction," its construction is a matter of law and must be "as written, in the light of the undisputed evidence as to the custom, usage, and meaning of its terms." (Citation omitted.) Where ambiguities appear, however, the intentions of the parties must be determined from evidence of the facts and circumstances surrounding entry of the consent judgment, just as the intentions of the parties to an ambiguous written contract must be determined from the surrounding circumstances.

As in *Allison,* the consent judgment here is not "clear and unambiguous," leaving no room for construction. Therefore, the

court below had to consider the provisions of the consent judgment and the surrounding circumstances to determine the parties' intentions. We must do likewise "to determine whether '[t]he facts in this mixed question of law and fact are supported by the evidence' and whether '[t]he findings support the conclusion[s] of law.'" *Allison v. Allison, supra* at 628, 277 S.E. 2d at 555, *quoting Highway Comm. v. Rankin,* 2 N.C. App. 452, 455, 163 S.E. 2d 302, 304 (1968). We are not bound by the court's "finding" that the payment and property division provisions are separable. *See White v. White, supra.*

Several factors indicate that the parties intended the consent judgment to be a complete property settlement, and its provisions reciprocal consideration for them, rather than separable alimony and property division provisions as the court below concluded. First, the preamble to the consent judgment states that the parties "had settled and compromised the differences between them as shall hereinafter appear." This language is subject to the interpretation that the agreement was considered a complete settlement by the parties. *Cf Britt v. Britt,* 36 N.C. App. 705, 245 S.E. 2d 381 (1978).

Second, the parties expressly agreed that the payments would continue "regardless of whether or not the parties are divorced or the plaintiff should remarry during said period of time." This provision indicates an intention by the parties to create something other than alimony since it expressly addresses, and circumvents, the condition of remarriage which must terminate alimony under G.S. 50-16.9(b).

Third, the parties agreed that plaintiff would be permitted to use defendant's motor vehicle "until the first periodic payment as herein provided is made." The nature of this provision, in combining elements of both the payment and property division provisions, indicates a dependence upon the settlement as a whole, integrated agreement to govern the parties' differences.

Fourth, the only indicia of alimony in the provisions of the consent judgment is the word itself appearing therein. "That the payments were denominated 'alimony' . . . is far from conclusive on the issue." *White v. White, supra* at 668, 252 S.E. 2d at 702. Further, although there is evidence to support it, there is no language in the consent judgment finding plaintiff to be a "de-

pendent" spouse and defendant to be a "supporting" spouse. Such designations are indicative of the payment and receipt of alimony. *See* G.S. 50-16.1 and G.S. 50-16.2. "While a finding of dependency is not required where judgments ordering payment of alimony are entered by consent, . . . the absence of such a finding was nevertheless a factor which the court could have considered in interpreting the inherently ambiguous consent order." *Allison v. Allison, supra* at 629, 277 S.E. 2d at 556. The absence of this language supports an interpretation that the payment provisions are not alimony. *Cf id.*

Fifth, the parties stipulated that the payments would be treated as "alimony" for tax purposes. Defendant's evidence discloses that both parties referred to the payments as "alimony." In fact, defendant testified that he "did not have any other agreements with [his] wife." This evidence alone is insufficient to support a conclusion that the payment provisions are modifiable as alimony under G.S. 50-16.9(b). When weighed against the foregoing factors, the court could have concluded that the parties' label of "alimony" was merely a convenient characterization and a device used by them for tax advantages only.

We are not unmindful of this Court's decision in *Rowe v. Rowe,* 52 N.C. App. 646, 280 S.E. 2d 182 (1981). In that case, unlike the case *sub judice,* the parties expressly agreed that the "permanent alimony" payments provided for would "terminate only upon the death of either of the parties *or the remarriage of the Defendant [wife],* whichever event shall first occur . . .." *Id.* at 649, 280 S.E. 2d at 184 (emphasis added).

This Court in *Rowe* rejected defendant Mary W. Rowe's argument that the parties' agreement was a complete property settlement by applying the following rules first announced by the Supreme Court in *White v. White, supra:*

> Alimony provisions are *presumed separable* from provisions for property settlement, and therefore modifiable, even when both appear in the same document. (Citations omitted.) In the face of this presumption, a party opposing modification must establish by a preponderance of the evidence that the provision for alimony contained in the [consent judgment] . . . was intended by the parties to be only a part of their overall property settlement.

*Rowe v. Rowe, supra* at 658, 280 S.E. 2d at 189 (emphasis added).

Even though the agreements in *Rowe* and in the case *sub judice* are distinguishable, and their results thereby opposite, the plaintiff here has presented enough evidence to overcome the presumption of separability announced in *White* and applied in *Rowe.* Under the analysis herein applied or under the *White* presumption, the provisions of the consent judgment and surrounding circumstances support the identical result.

Therefore, upon considering all of the factors named above which could or should have influenced the court below, we hold that those factors only support a conclusion that the parties intended those provisions to be inseparable and constitute a complete property settlement not terminable upon plaintiff's remarriage. *See Bunn v. Bunn, supra; Allison v. Allison, supra.*

The order appealed from is

Vacated and the case remanded for findings and conclusions consistent with this opinion.

Judges VAUGHN and WHICHARD concur.