IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-703

No. COA21-68

Filed 21 December 2021

Johnston County, No. 17 CVD 3894

SALLYCETA WADSWORTH, Plaintiff,

v.

KEITH WADSWORTH, Defendant.

Appeal by Defendant from order entered on 6 July 2020 by Judge Jim Love, Jr., in Johnston County District Court. Heard in the Court of Appeals 5 October 2021.

*Mary McCullers Reece for the Plaintiff-Appellee.*

*Tiffanie C. Meyers for the Defendant-Appellant.*

JACKSON, Judge.

¶ 1     Keith Wadsworth ("Defendant") appeals from the trial court's order on equitable distribution, alimony, and child support. We affirm in part, vacate in part, and remand the case to the trial court for entry of an award of attorney's fees that does not include fees for equitable distribution.

## I.     Background

¶ 2     The parties met in Bridgeport, Connecticut, and were married on 28 July 2001. Defendant had one child from a prior relationship at the time. Sallyceta Wadsworth ("Plaintiff") was aware of Defendant's eldest child before the parties were married.

¶ 3        In 2004, after the birth of their first child, the parties moved to North Carolina. Defendant accepted a position as a contract negotiator at Aetna Healthcare and Plaintiff worked part-time as a self-employed hairstylist while raising their child. In 2009, a second child was born to the marriage.

¶ 4        Sometime in 2009, a deputy sheriff served Defendant at the marital home with a lawsuit for child support. Defendant told Plaintiff that the lawsuit was related to his oldest child, and she believed him.

¶ 5        In 2011, Plaintiff became pregnant again. Not long afterward, Plaintiff found a VHS tape in the marital home that contained a recording of Defendant engaging in sexual intercourse with another woman. The recording bore a date during the parties' marriage. Plaintiff confronted Defendant about the tape, and he did not deny he was in it.

¶ 6        Plaintiff then found the court papers Defendant had been served with in 2009 and learned that the lawsuit was *not* related to Defendant's eldest child, but instead was related to child support for two children Defendant had with another woman during the parties' marriage.

¶ 7        Plaintiff gave birth to the third child of the marriage in November 2011. At the time, Defendant was traveling frequently. He told Plaintiff that the trips were work-related, but bank and credit-card statements showed that the trips included destinations such as Daytona Beach, San Juan, Myrtle Beach, and the Mohegan Sun,

a casino in Connecticut.

¶ 8        Defendant moved out of the marital residence on 14 April 2013 but continued paying for the mortgage and utilities and contributed towards the cost of groceries, clothing, and shoes for some time.  These contributions decreased over time.

¶ 9        Defendant had a third child with another woman while still married to Plaintiff in August 2017.

¶ 10        Plaintiff initiated this action on 13 December 2017 in Johnston County District Court.  The matter came on for trial before the Honorable Jim Love, Jr., on 27 June 2019.  Judge Love presided over a three-day bench trial.  The court entered an order on 6 July 2020 ordering Defendant to pay Plaintiff past-due and prospective child support, alimony, and awarding Plaintiff attorney's fees.  The court ordered Defendant to maintain life insurance to secure his alimony and child support obligations.

¶ 11        Defendant entered timely written notice of appeal from the trial court's order on 4 August 2020.

## II.    Analysis

¶ 12        Defendant makes essentially five arguments on appeal.  We address each in turn.

### A.  Standard of Review

¶ 13        "It is well established that child support orders entered by a trial court are

accorded substantial deference by appellate courts[.]" *Sergeef v. Sergeef*, 250 N.C. App. 404, 406, 792 S.E.2d 192, 193 (2016) (internal marks and citation omitted). This deference "is based upon the trial courts' opportunity to see the parties; to hear the witnesses; and to detect tenors, tones, and flavors that are lost in the bare printed record read months later by appellate judges[.]" *Shipman v. Shipman*, 357 N.C. 471, 474, 586 S.E.2d 250, 253 (2003) (internal marks and citation omitted). Our review is thus limited to "whether there is sufficient competent evidence to support the findings of fact, and whether, based on these findings, the Court properly computed the child support obligations." *Miller v. Miller*, 153 N.C. App. 40, 47, 568 S.E.2d 914, 918-19 (2002) (citation omitted). "Accordingly, should we conclude that there is substantial evidence in the record to support the trial court's findings of fact, such findings are conclusive on appeal, even if record evidence might sustain findings to the contrary." *Shipman*, 357 N.C. at 475, 586 S.E.2d at 253-54 (internal marks and citation omitted).

## B. Challenged Factual Findings

Defendant's first three arguments on appeal challenge the trial court's findings of fact. Defendant argues that the trial court erred in calculating his child support obligation based on work-related childcare of $600 per month; that the trial court erred in calculating extraordinary expenses based on insufficient evidence; and that the trial court erred in calculating his child support arrears based on insufficient

evidence. We disagree with all three contentions.

### 1. *Finding of Fact 42*

¶ 15    Defendant challenges the evidentiary support for the trial court's finding that the reasonable work-related childcare costs of the parties were $600 per month. We hold that this finding was supported by competent evidence.

¶ 16    The trial court found as follows in Finding of Fact 42:

> 42.    That in order for Plaintiff to work, the minor children Maya and Mason needed work-related childcare on days they are not in school. During 2018, the Plaintiff had to make an election to either work and pay childcare or not work. That she could only afford childcare which cost $150.00 per week. That Plaintiff feels that in the future she would need to pay childcare for eighteen weeks. That the Plaintiff's cost of daycare would be $600.00 per month.

¶ 17    The finding above was based on Plaintiff's testimony and her financial affidavit, which included the following breakdown of her average work-related childcare expenses for her younger two children for an estimated ninety days per year:

90 days of childcare/five workdays per week=18 weeks,

18 weeks x two children x $200 per week=$7,200

$7,200/12 months=$600/month

¶ 18    Plaintiff testified as follows on direct examination:

[PLAINTIFF'S COUNSEL]:  So looking at [your financial

affidavit], have you tried to estimate the number of days you would need each month to provide that daycare or work-related childcare so you could work those days?

[PLAINTIFF]: Yes.

[PLAINTIFF'S COUNSEL]: Have you used a school calendar to try to determine the number of days that they are out of school, if it's during the school year?

[PLAINTIFF]: Yes. This is it. It includes teacher workday, holidays, summer breaks. Holidays . . . [,] [a] total of 90 days for the year for the school year, calendar year, that they are out of school.

[PLAINTIFF'S COUNSEL]: And so, if we looked at that in terms of weeks, that would be about 18 weeks?

[PLAINTIFF]: Correct.

[PLAINTIFF'S COUNSEL]: And then did you multiply that times two children times $200 a week, and then prorate that per month to be about $600 per month?

[PLAINTIFF]: Yes.

[PLAINTIFF'S COUNSEL]: And is that the number that you used in your financial affidavit on page three, rather than the $200—or $150 that you state that you're currently able to afford.

[PLAINTIFF]: Yes.

We hold that this testimony, along with Plaintiff's financial affidavit, was competent evidence to support the trial court's finding that the reasonable work-related childcare costs of the parties were $600 per month.

¶ 19        Defendant asserts that the finding of $600 per month is erroneous because it

is based on a $200 per week rate Plaintiff paid for childcare during the summer when the children were not in school and not on daily rates for childcare during the school year, and that determining prospective childcare costs based on a weekly rate rather than a daily rate will result in overpayment for childcare. Defendant points to testimony by Plaintiff that she paid for childcare by the day some of the time when she could not afford to pay for an entire week to support the idea that basing prospective childcare costs on a daily rather than weekly rate would result in lower costs overall. Plaintiff's testimony does not support this idea, however. Plaintiff testified that she paid for childcare at a daily rate when she did not have the funds to pay for a weekly rate; her testimony does not suggest that the daily price she paid was less expensive on a weekly basis than paying for a full week: instead, she testified that she paid by the day when she could not afford to pay by the week. Accordingly, we reject the argument that determining the childcare costs based on a weekly rate rather than a daily rate was erroneous.

### 2. *Findings of Fact 39, 40, and 41*

¶ 20    Defendant also challenges the trial court's finding that the children's extraordinary expenses were $953.41 per month. Rather than challenge the sufficiency of the evidence to support the costs included in the monthly average of these expenses, Defendant contends that some of the costs used to calculate the average should not have been included because they were for activities that had taken

place in the past and there was no evidence that these activities were ongoing. We hold that the trial court's findings related to the children's extraordinary expenses were supported by competent evidence and that the court did not abuse its discretion by calculating an average that included costs that there was no evidence would be recurring.

¶ 21        North Carolina General Statute § 50-13.4(c) provides that child support

> shall be in such amount as to meet the reasonable needs of the child for health, education, and maintenance, having due regard to the estates, earnings, conditions, accustomed standard of living of the child and the parties, the child care and homemaker contributions of each party, and other facts of the particular case.

N.C. Gen. Stat. § 50-13.4(c) (2019). "The calculation of child support is governed by North Carolina Child Support Guidelines established by the Conference of Chief District Court Judges." *Craven Cnty. ex rel. Wooten v. Hageb*, 2021-NCCOA-231 ¶ 12 (2021) (citation omitted). "Child support set in accordance with the Guidelines is conclusively presumed to be in such amount as to meet the reasonable needs of the child and commensurate with the relative abilities of each parent to pay support." *Beamer v. Beamer*, 169 N.C. App. 594, 596, 610 S.E.2d 220, 223-24 (2005) (internal marks and citation omitted).

¶ 22        Regarding "extraordinary expenses," the Child Support Guidelines provide that

> [o]ther extraordinary child-related expenses (including (1) expenses related to special or private elementary or secondary schools to meet a child's particular education needs, and (2) expenses for transporting the child between the parent's homes) may be added to the basic child support obligation and ordered paid by the parents in proportion to their respective incomes if the court determines the expenses are reasonable, necessary, and in the child's best interest.

N.C. Child Support Guidelines (2019). "Determination of what constitutes an extraordinary expense is within the discretion of the trial court[.]" *Biggs v. Greer*, 136 N.C. App. 294, 298, 524 S.E.2d 577, 581 (2000) (internal marks and citation omitted). A court may adjust the basic child support obligation for extraordinary expenses, but such an adjustment is discretionary and does not qualify as a deviation from the Guidelines. *Id.*, 524 S.E.2d at 581-82. Thus, "[e]ven though the guidelines note two specific extraordinary expenses, school and travel, . . . [this] list . . . is not exhaustive[.]" *Balawejder v. Balawejder*, 216 N.C. App. 301, 317, 721 S.E.2d 679, 688 (2011) (internal marks and citation omitted).

The trial court found in relevant part as follows:

> 39.  That the Plaintiff's and Defendant's three minor children are involved in numerous extracurricular activities which require expenses. Kailey is involved in travel soccer, piano, and pageants. Maya is involved in gymnastics, school clubs, and theater camp. Mason is involved in basketball and theater camp.
>
> 40.  That the minor child Maya is struggling in school, and the Plaintiff hired a tutor to help Maya with her

studies.

> 41. That the approximate average of costs for the minor children's extracurricular activities and Maya's tutoring is $953.41 per month.

Defendant specifically objects to inclusion of costs for driving school, theater camp, and pageants to calculate the average costs of the children's extraordinary expenses. The trial court credited in full Plaintiff's financial affidavit in arriving at the $953.41 per month figure, which included a $65 cost for driving school, a $704 cost for pageants, and a $152.50 per-child cost for theater camp for two of the three children. While there was no evidence that the cost of the objected-to expenses would be recurring, neither was there evidence that these costs would *not* be recurring, setting aside the attorney argument in Defendant's appellate brief. We therefore hold that including these costs was well within the trial court's discretion in determining the children's average extraordinary expenses going forward.

### 3. *Findings of Fact 51, 52, 53, 54, and 55*

Defendant also challenges the trial court's findings related to his child support arrears for the 2018-2020 timeframe—the period when this action was pending. Specifically, Defendant argues that the court neglected to account for evidence that some of the children's extraordinary expenses had been paid by him directly during this two-year period and that some of the expenses did not exist during the entire period. We hold that the trial court was not required to give Defendant a credit for

his children's expenses he paid after Plaintiff commenced this action but before the court entered the order on appeal, and that the court calculated his arrears correctly.

¶ 26 As noted previously, "[t]he North Carolina Child Support Guidelines allow the court to add to the parties' basic child support obligation based on certain extraordinary expenses[.]" *Balawejder*, 216 N.C. App. at 316, 721 S.E.2d at 688. "[A]bsent a party's request for deviation, the trial court is not required to set forth findings of fact related to the child's needs and the noncustodial parent's ability to pay extraordinary expenses." *Biggs*, 136 N.C. App. at 298, 524 S.E.2d at 582. "Thus, the trial court has the discretion to determine what expenses constitute extraordinary expenses, the amount of these expenses, and . . . how the expenses are to be apportioned between the parties." *Mackins v. Mackins*, 114 N.C. App. 538, 549, 442 S.E.2d 352, 359 (1994).

¶ 27 The trial court was not required to make findings of fact regarding Defendant's contribution to the children's extraordinary expenses during the time the case was pending or provide Defendant with any credit or offset for these contributions in calculating his child support arrears. Instead, the court needed only to determine the parties' adjusted gross incomes, and the cost of current work-related childcare, health insurance premiums, and extraordinary expenses. The trial court made these findings and used the results in the appropriate worksheet.

**C. Securing Child Support and Alimony Obligations with Life Insurance**

The trial court found in relevant part as follows in support of its order that Defendant maintain a life insurance policy to secure his child support arrears and alimony obligation:

> 44. That the Plaintiff is a dependent spouse who is actually substantially dependent upon the Defendant for her maintenance and support.
>
> 45. That the Defendant is a supporting spouse upon whom the Plaintiff is actually substantially dependent for maintenance and support.
>
> . . .
>
> 54. That the Defendant's total child support arrears as of June 30, 2020 is . . . $114,730.22.
>
> . . .
>
> 56. The Defendant shall pay all amounts owed for July 1, 2020 ($4,105.35 in child support) on or before July 5, 2020. Defendant's child support arrearage for February 1, 2020 through June 30, 2020 is being repaid from Defendant's 401(k). Defendant's alimony arrears for February 1, 2020 through July 31, 2020 shall be repaid on or before July 5, 2020 . . . . Effective August 1, 2020, the Defendant shall pay Plaintiff child support of $4,105.35 and alimony of $1,900.00 each month on or by the first day of each month.
>
> 57. That Defendant shall secure his child support arrears and alimony by maintaining life insurance on his life with a death benefit of $550,000.00, naming Plaintiff as beneficiary.

Defendant argues that no North Carolina statute authorizes a trial court to order a supporting spouse to maintain a life insurance policy to secure a child support

or alimony obligation. Plaintiff argues that N.C. Gen. Stat. § 50-16.7(b) authorizes such an order. Section 50-16.7(b) provides in relevant part that a court ordering the payment of alimony may "require the supporting spouse to secure the payment of alimony . . . by means of a bond, mortgage, or deed of trust, or any other means ordinarily used to secure an obligation to pay money or transfer property[.]" N.C. Gen. Stat. § 50-16.7(b) (2019). We hold that the life insurance the trial court ordered Defendant to maintain did not qualify as "security" within the meaning of § 50-16.7(b), and therefore do not reach the issue of whether life insurance can qualify as a "means ordinarily used to secure an obligation to pay money" under § 50-16.7(b).

¶ 30 An award of alimony is only authorized "upon a finding that one spouse is a dependent spouse, that the other spouse is a supporting spouse, and that an award of alimony is equitable after considering all relevant factors[.]" N.C. Gen. Stat. § 50-16.3A(a) (2019). N.C. Gen. Stat. § 50-16.1A(2) defines a "dependent spouse" as "a spouse, whether husband or wife, who is actually substantially dependent upon the other spouse for his or her maintenance and support or is substantially in need of maintenance and support from the other spouse." *Id.* § 50-16.1A(2). Subsection (5) of § 50-16.1A goes on to define "supporting spouse" as "a spouse, whether husband or wife, upon whom the other spouse is actually substantially dependent for maintenance and support or from whom such spouse is substantially in need of maintenance and support." *Id.* § 50-16.1A(5).

¶ 31 However, "[i]f a dependent spouse who is receiving postseparation support or alimony from a supporting spouse under a judgment or order of a court of this State remarries or engages in cohabitation, the postseparation support or alimony shall terminate." *Id.* § 50-16.9(b). Likewise, "[p]ostseparation support or alimony shall terminate upon the death of either the supporting or the dependent spouse." *Id.* The reason is that "[t]he purpose of alimony is to provide support and maintenance for the dependent spouse." *Potts v. Tutterow*, 114 N.C. App. 360, 363, 442 S.E.2d 90, 92 (1994) (citation omitted). Accordingly, alimony has been described as the proportion of the supporting spouse's estate "which is judicially allowed and allotted to a [dependent spouse] for [his or] her subsistence and livelihood during the period of (their) separation." *Rogers v. Vines*, 6 Ired. 293, 297 (1846). Just as alimony terminates on the death of either party, so too do other legal obligations to make support payments to a dependent spouse, *Bland v. Bland*, 21 N.C. App. 192, 196, 203 S.E.2d 639, 642 (1974), unless they are part of "a complete settlement of all property and marital rights between the parties" for which there is reciprocal consideration, such that "the entire agreement would be destroyed by a modification of the support provision[,]" *Walters v. Walters*, 54 N.C. App. 545, 548, 284 S.E.2d 151, 153 (1981) (internal marks and citation omitted), *rev'd on other grounds*, 307 N.C. 381, 298 S.E.2d 338 (1983).

¶ 32 The requirement in the trial court's order that Defendant "secure his child

support arrears and alimony by maintaining life insurance on his life with a death benefit of $550,000.00," was, in effect, a second award of alimony rather than security for his alimony obligation of $1,900 per month and unsatisfied child support arrears. "Security" has been defined as "[c]ollateral given or pledged to guarantee the fulfillment of an obligation; esp., the assurance that a creditor will be repaid (usu. with interest) any money or credit extended to a debtor." *Security*, Black's Law Dictionary (11th ed. 2019). The obligations purportedly secured by the requirement in the trial court's order that Defendant maintain life insurance with a death benefit of $550,000 were the net, unsatisfied child support arrears that accrued between 1 February 2020 and 30 June 2020 of $18,026.75 and a total potential alimony obligation of $456,000 in nominal terms (i.e., without any adjustment for inflation or other discounts), assuming (1) Defendant survived the entire twenty years he was ordered to pay $1,900 per month in alimony; (2) the parties never reconciled; and (3) Plaintiff never remarried. That is, setting aside the validity of this purported security, if the requirement that Defendant maintain life insurance with a death benefit of $550,000 was, in fact, security for his unsatisfied, net child support arrears and his total potential alimony exposure, the life insurance overcollateralized the obligations secured, which equaled at most $474,026.75. The obligations purportedly secured equaled $75,973.25 less than the $550,000 of "security."

¶ 33        More fundamentally though, the requirement in the trial court's order that

Defendant maintain life insurance with a death benefit of $550,000 was, in effect, a second award of alimony, which the overcollateralization of the purported security underscores. The death benefit of $550,000 did *not* guarantee the fulfillment of the obligations to pay $18,026.75 in net, unsatisfied child support arrears and the obligation to pay as much as $456,000 in alimony. Were Defendant to pay his net, unsatisfied child support arrears on or before 5 July 2020 and the $1,900 per month, as ordered, but pass away on 31 July 2040, the day before his final $1,900 monthly alimony payment was due, assuming the parties never reconciled and Plaintiff never remarried, Plaintiff would receive a windfall: $18,026.75 in child support arrears; $454,100 in monthly alimony payments; and $550,000 of "security" in the form of a death benefit from the life insurance policy—representing more than a double recovery of the amounts purportedly "secured" by the life insurance. Accordingly, we hold that the life insurance the trial court ordered Defendant to maintain did not qualify as "security" within the meaning of § 50-16.7(b).

¶ 34       Finally, as we reasoned in *Squires v. Squires*, 178 N.C. App. 251, 264, 631 S.E.2d 156, 164 (2006), the requirement in the trial court's order that Defendant maintain life insurance with a death benefit of $550,000 is "without effect as such a term is barred by statute." To reiterate, "alimony shall terminate upon the death of either the supporting or the dependent spouse." N.C. Gen. Stat. § 50-16.9(b) (2019). The death benefit of the life insurance Defendant was ordered to maintain would

constitute alimony Plaintiff received after Defendant's death—upon the occurrence of which any obligation of Defendant to pay Plaintiff alimony would have been extinguished. *See id.* Section 50-16.7(b) does not create an exception from the rule that an alimony obligation terminates upon the death of either the supporting or dependent spouse. We therefore vacate the portion of the trial court's order requiring Defendant to maintain life insurance with a death benefit of $550,000 naming Plaintiff as beneficiary.

**D. Attorney's Fees**

¶ 35        Defendant challenges the trial court's award of attorney's fees on the basis that the award includes fees incurred during the equitable distribution portion of the case, which are not recoverable. Plaintiff suggests that this is a clerical error in the order, but we disagree. We hold that (1) competent evidence in the record supported the trial court's findings that Plaintiff was a dependent spouse; (2) Defendant was a supporting spouse; and (3) Plaintiff had insufficient means to subsist during the prosecution of the case and defray necessary expenses. However, the attorney's fee award included fees incurred during the equitable distribution portion of the case, which was improper. We vacate the portion of the order awarding Plaintiff attorney's fees and remand the case for entry of an award of attorney's fees that does not include fees for equitable distribution.

¶ 36        "A party can recover attorney's fees only if such a recovery is expressly

authorized by statute." *Robinson v. Robinson*, 210 N.C. App. 319, 336, 707 S.E.2d 785, 797 (2011) (internal marks and citation omitted). N.C. Gen. Stat. § 50-13.6 authorizes attorney's fee awards in actions for child custody, while N.C. Gen. Stat. § 50-16.4 authorizes them in actions for alimony. *See* N.C. Gen. Stat. § 50-13.6 (2019) ("[T]he court may in its discretion order payment of reasonable attorney's fees to an interested party acting in good faith who has insufficient means to defray the expense of the suit."); *id.* § 50-16.4 ("[T]he court may . . . enter an order for reasonable counsel fees, to be paid and secured by the supporting spouse in the same manner as alimony."). In actions for equitable distribution, however, attorney's fees are not recoverable. *Robinson*, 210 N.C. App. at 337, 707 S.E.2d at 797 (citations omitted). In a combined action for equitable distribution, alimony, and child support, a trial court may award attorney's fees for the alimony and child support portions of the case, but not for the equitable distribution portion. *Id.*

¶ 37 Plaintiff's counsel averred in a 14 January 2020 affidavit prepared in support of the award of attorney's fees that total fees and costs for Plaintiff's claims for alimony, child custody, and child support were $11,321.86. A 14 January 2020 billing statement attached to the affidavit reflects a balance of $11,489.11, however, and the trial court awarded attorney's fees to Plaintiff in the amount reflected in the billing statement rather than the affidavit. A review of the billing statement reveals that the billing statement includes fees for the equitable distribution portion of the case.

There is a handwritten notation on the billing statement that states that "since 6/26/2019 (date of prior affidavit), an additional $6,515.61 has been incurred[.]" The affidavit likewise references a prior affidavit submitted by Plaintiff's counsel in support of the award, stating that through 26 June 2019, the recoverable fees were $4,806.25. However, this prior affidavit is not in the record on appeal. The exhibits/evidence log prepared by the clerk references a Plaintiff's Exhibit 27 described as "expenses for atty's fees" admitted by the court on 28 June 2019, suggesting that the prior affidavit not in the record may be Plaintiff's Exhibit 27.

¶ 38    Under Rule 9 of the North Carolina Rules of Appellate Procedure, our review "is solely upon the record on appeal," N.C. R. App. P. 9(a), and we cannot consider trial exhibits not included in the record on appeal, *Ronald G. Hinson Elec., Inc. v. Union Cnty. Bd. of Educ.*, 125 N.C. App. 373, 375, 481 S.E.2d 326, 328 (1997). We hold that the trial court erroneously relied only on the 14 January 2020 billing statement—which, as both the handwritten notation on the billing statement and affidavit indicate, included recoverable fees of only $6,515.61, not the total recoverable fees of $11,321.86. Accordingly, we vacate the attorney's fee award and remand the case for entry of an attorney's fees award that does not include fees for equitable distribution.

### III.    Conclusion

¶ 39    We affirm the order of the trial court in part but vacate the portions of the

order requiring Defendant to maintain life insurance and awarding Plaintiff attorney's fees. We remand the case to the trial court for entry of an award of attorney's fees that does not include fees for equitable distribution. Because N.C. Gen. Stat. §§ 50-13.6 and 50-16.4 only authorize awards of reasonable fees, the award entered by the trial court on remand must be supported by factual findings demonstrating that the fees are reasonable. *See, e.g.*, *Falls v. Falls*, 52 N.C. App. 203, 221, 278 S.E.2d 546, 558 (1981) ("To support an award of attorney's fees, the trial court should make findings as to the lawyer's skill, his hourly rate, its reasonableness in comparison with that of other lawyers, what he did, and the hours he spent.").

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

Judges DILLON and MURPHY concur.